2008 OK CIV APP 58

NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma Corporation, Plaintiff/Appellee,

v.

OKEMAH MANAGEMENT COMPANY, LLC and EIFS Systems, LLC, Defendants/Appellants,

and

Act South, LLC, Allergy Clinic of Tulsa, Inc. and Reco Electric Company dba Reco Interprises, Inc., Defendants.

No. 104,769.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 25, 2008.

Rehearing Denied March 20, 2008.

Certiorari Denied June 16, 2008.

Galen L. Brittingham, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, OK, for Plaintiff/Appellee.

Richard D. Gibbon, Gibbon, Barron & Barron, P.A., Tulsa, OK, for Defendants/Appellants.

Randall A. Gill, Tulsa, OK, for Defendant, Reco Electric Company.

BAY MITCHELL, Vice–Chief Judge.

¶1 Defendants/Appellants Okemah Management Company, LLC and EIFS Systems, LLC (Okemah) appeal from an order granting summary judgment to Plaintiff/Appellee, National American Insurance Company (NAICO), in this declaratory judgment action.[1] NAICO's action sought a ruling that

---

1. Appellate courts review an award of summary judgment *de novo*, giving no deference to the trial court. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963. Summary judgment is only appropriate when there is no substantial controversy as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*, ¶ 11, 160 P.3d at 963–64. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. *Haworth v. Jantzen*, 2006 OK 35, ¶ 13, 172 P.3d 193, 196. And issues of law, of course, are reviewed de novo. *Kluver*

it had no duty to defend or indemnify Okemah in an underlying action brought in Tulsa County by ACT South, LLC and Allergy Clinic of Tulsa, Inc. (Plaintiffs). NAICO provided commercial general liability insurance (CGL) and umbrella coverage to Okemah from 2003 through 2006.[2]

¶ 2 The Plaintiffs in the underlying case, ACT South and Allergy Clinic of Tulsa, alleged in their initial petition that because of poor workmanship and the failure to employ good building practices, their commercial building experienced general leaks, leaked water around the skylight, and large amounts of water drained into the building when it rained. In addition, they alleged the EIFS[3] system was incorrectly installed, which allowed rain and moisture behind it, and caused contamination, fungus, mold and other hazardous conditions. Plaintiffs initially sued only the general contractor, Reco Electric Co. d/b/a Reco Enterprises, Inc. (Reco), and the engineering subcontractor, Khoury Engineering, Inc. (Khoury), for breach of implied warranty and poor workmanship. Plaintiffs later amended their petition to add claims that several subcontractors, including Okemah Management Co., caused property damage by failing to perform their subcontracts in a workmanlike manner. Reco then cross-claimed against the subcontractors for indemnification and contribution, in the event Plaintiffs obtained a judgment against Reco.

¶ 3 Plaintiffs filed a Second Amended Petition, adding an allegation that Okemah was guilty of *negligence per se* for violating the BOCA (Building and Code Administrators) code regarding installation of the EIFS system. Plaintiffs also alleged Reco was guilty of *negligence per se* for failing to follow the BOCA requirements for special inspections

of the EIFS system. NAICO provided a defense to Okemah subject to a reservation of rights.

¶ 4 NAICO filed this declaratory judgment action, seeking a determination that its policies did not require it to indemnify or defend Okemah. NAICO filed a motion for summary judgment, claiming its policies only provide coverage for tort claims, not for the contractual claims asserted by Plaintiffs. Alternatively, NAICO argues coverage would be excluded by various exclusions, including: 1) Contractual Liability Exclusion; 2) Damage to Your Product Exclusion; 3) Damage to Your Work Exclusion; 4) Building Related Illness Exclusion; 5) Fungi or Bacteria Exclusion; and 6) Exterior Insulation and Finish Systems (EIFS) Exclusion. Finally, NAICO contends it does not have any duty to defend where there is no coverage under the policies.

¶ 5 Okemah counters that the underlying plaintiffs abandoned their breach of contract claims and now only assert *negligence per se,* for which the policies should provide coverage. Okemah points out that Plaintiffs admitted they could not sue Okemah for poor workmanship, because they did not have a contract with Okemah. Okemah also argues that none of the exclusions apply. Finally, Okemah contends NAICO's duty to defend is broader than its duty to indemnify, and NAICO should at least be required to provide a defense to Okemah.

¶ 6 A review of the record, including the policies and their exclusions, shows coverage is clearly excluded by the EIFS Exclusion.[4] The policies all contain the following endorsement, "Exclusion—Exterior Insulation and Finish Systems (EIFS)," which provides in relevant part:

---

*v. Weatherford Hosp. Authority,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

2. The coverage was provided under both the CGL and umbrella policies by three separate policies. However, the terms of the policies were the same each year, except for the addition of the "Fungi or Bacteria Exclusion" and the "Building Related Illness Exclusion."

3. An EIFS system is an "Exterior Insulation and Finish System."

4. The insuring agreement in the policies provides that NAICO "will pay those sums that the insured becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (emphasis added). The umbrella policies contain similar language. We offer no opinion as to whether the policies would provide coverage were it not for the EIFS Exclusion. The exclusions, however, trump the insuring agreement and any coverage that might occur as a result of the insuring agreement.

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, the following:

a. The design, manufacture, sale, service, construction, *fabrication, preparation, installation, application,* maintenance or repair, including remodeling, service, correction, or replacement of an "exterior insulation and finish system" or "direct-applied exterior finish system" *or any part thereof, or any substantially similar system or any part thereof,* including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with such a system and including any method or procedure used to correct problems with installed or partially installed systems, that was performed by or on behalf of any insured; or . . .

. . . .

(emphasis added). The Policyholder Notice provision also states that the endorsement excludes coverage for damages that "arise out of any work that you do . . . related to an 'exterior insulated and finish system' . . . This includes any damage to a building or structure *caused by the intrusion of water or moisture* through an EIFS . . . system for which you may be held responsible." (emphasis added).

¶ 7 The definition section of this exclusion states that an EIFS system is "an exterior cladding or finish system and all component parts therein used on any part of any structure, and consisting of:

(1) A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and

(2) The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and

(3) A reinforced or unreinforced base coat; and

(4) A finish coat providing surface texture and color; and

(5) Any flashing, caulking or sealant used with the system."

¶ 8 Okemah argues that this exclusion does not apply to the work it performed on the Plaintiffs' building because it did not contract to apply the entire EIFS system. Okemah's contract with Reco specifically excluded the soffit vent, flashing, caulking and sealant from Okemah's work responsibility. Okemah claims that in order for the exclusion to apply, it would have had to install or apply *all five elements* of the EIFS system, as defined in the exclusion. We disagree. The exclusion specifically applies to any property damage that arises out of or is caused by an EIFS system "or any part thereof, or any substantially similar system or any part thereof . . ." The exclusion from coverage is clear and unambiguous, and is not limited to complete systems installed by the insured. Instead, the exclusion was intended to apply to work by the insured that is related to any part of an EIFS system. An insurance contract is ambiguous only if it is susceptible to two constructions on its face, and the court will not indulge in strained interpretation to create an ambiguity. *Haworth,* ¶ 13, 172 P.3d at 196.

¶ 9 Okemah also contends that for the exclusion to apply, NAICO had to prove that the property damage alleged in the case was caused by Okemah's work on the EIFS system. It contends the moisture was caused by the EIFS system not being properly sealed, caulked or flashed, which was not Okemah's responsibility. This argument will be relevant to Okemah's ultimate liability in the underlying case. However, we find no support for its argument that NAICO must prove that the damages alleged by the Plaintiffs were caused by Okemah's work on the EIFS system rather than by a third party. Certainly, the policies do not even impliedly contain such a requirement.

¶ 10 Okemah is being sued for property damage allegedly arising out of the EIFS system it installed. That is the only basis for Okemah's potential liability. However, any damage caused by the installation, application, *etc.* of an EIFS system is specifically and unambiguously excluded from coverage under its insurance policies with NAICO whether or not Okemah (or any other contractor or subcontractor) is ultimately found

liable. The trial court properly granted summary judgment to NAICO, finding there is no coverage under these policies.[5]

¶11 The trial court also properly found NAICO did not have a duty to defend Okemah. The liability policies provide that NAICO will have no duty to defend against any suit seeking damages "to which this insurance does not apply." The umbrella policies state NAICO will defend when a suit seeks damages "covered by this policy." There is simply no duty to defend under the policies when there is no coverage for the claims in the underlying suit.

¶12 Okemah has noted Oklahoma case law, which provides that the duty to defend is separate from, and broader than the duty to indemnify. *e.g., First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland*, 1996 OK 105, ¶13, 928 P.2d 298, 303. However, an insurer has no duty to

defend unless "it ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* (emphasis in original). Here, the only potential liability in the underlying lawsuit arises out of the installation, application, *etc.* of the EIFS system, which is excluded from coverage. Thus, there is no potential for liability under the policies, and NAICO thus has no duty to defend. The court correctly granted summary judgment to NAICO.

¶13 AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.

---

5. Because we find the EIFS Exclusion applies, we do not determine the applicability of any other exclusions in the policies.