2011 OK CIV APP 94

**NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma corporation, Plaintiff/Appellee,**

v.

**GERLICHER COMPANY, LLC, an Oregon limited liability company; and OK Lakes, LLC, a Washington Limited Liability company, Defendants/Appellants,**

and

**Pinion Construction, Inc., an Oklahoma corporation, Defendant.**

No. 108,114.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 30, 2011.

As Corrected Sept. 29, 2011.

Gregory D. Nellis, Galen L. Brittingham, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, Oklahoma, for Plaintiff/Appellee.

Scott Hathaway, Julia Forrester–Sellers, Conner & Winters, LLP, Tulsa, Oklahoma, for Defendants/Appellants.

JOHN F. FISCHER, Vice–Chief Judge.

¶1 Gerlicher Company, LLC and OK Lakes, LLC appeal from the district court's grant of summary judgment to commercial general liability insurer National American Insurance Company (NAICO). The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp.2010, ch. 15, app. 1, and the matter stands submitted without appellate briefing.

## BACKGROUND

¶2 The following facts are undisputed. Gerlicher contracted to purchase a commercial building built by general contractor Pinion Construction, Inc. (Pinion). The building's construction included an exterior insulating finishing system (EIFS).[1] Con-

---

1. According to the EIFS Industry Members Association, EIFS is a multi-layered exterior wall system or cladding product that wraps the exterior of a building. EIFS typically consists of the following components: (1) insulation board, made of polystyrene or polyisocyanurate foam, which is secured to the exterior wall surface with a specially formulated adhesive and/or mechanical attachment; (2) a water-resistant base coat, which is applied on top of the insulation and

struction on the building was completed on April 1, 2006, and the United States Fish & Wildlife Service leased the premises. Gerlicher subsequently entered into an agreement assigning its purchase contract and lease to OK Lakes.

¶ 3 Sometime in August 2008, the Fish and Wildlife Service notified Gerlicher and OK Lakes of significant problems in the building related to water intrusion, high humidity and mold. An environmental testing company, MBA Technologies, was retained on Gerlicher's behalf to evaluate the problems with the building. In a "Moisture Intrusion and Causation Assessment" report prepared for "the Gerlicher Claim" dated November 3, 2008, MBA Technologies concluded that "[t]here are at least three issues that work in tandem which are the largest factors in the moisture problem of the building."[2] MBA Technologies identified these factors in its report:

The first and primary issue is the presence of vinyl wall covering (an unplanned vapor barrier) on the interior side of the exterior wall system. This creates a vapor barrier on the interior side of the wall system. There is also an engineered vapor barrier on the exterior wall system which was installed when the building was constructed. Water that enters the wall system becomes trapped between the two vapor barriers and cannot easily evaporate.

The second item is that the brick row ledge is sloped towards the wall instead of away from the wall system. Brick row ledges should be sloped away from the wall system to allow water to drain away from this vulnerable intersection. Because of this improper slope, water collects against the brick row edge [sic] and the EIFS wall system and the windows that are installed in the EIFS.

The third item is that the EIFS system interface at the windows has deteriorated caulking and holes and cracks all along this brick row/EIFS wall system. This allows moisture to enter the interstitial wall cavities during precipitation events. This water becomes trapped between the engineered vapor barrier located on the outside of the exterior wall system, and the vinyl wall covering located on the inside of the exterior wall system.

¶ 4 Gerlicher and OK Lakes brought suit against Pinion in federal court, alleging in their complaint that Pinion had breached its implied warranty to complete the building in a workman-like manner and acted negligently in constructing the building, causing the need for extensive repairs to correct construction defects and resulting damage. Pinion notified its liability insurer NAICO of the lawsuit and requested NAICO to defend and indemnify it in relation to that lawsuit. NAICO agreed to provide Pinion a defense, subject to a reservation of its right to assert that the "Commercial General Liability" (CGL) insurance policies[3] issued to Pinion did not provide coverage for the damages sought by Gerlicher and OK Lakes.

¶ 5 On August 12, 2009, NAICO filed this declaratory judgment action seeking a determination that the CGL policies did not provide coverage for the damages Gerlicher and OK Lakes sought to recover against Pinion. NAICO moved for summary judgment on several grounds. NAICO argued that the policies extended coverage to damages arising from tort, not contract, and the damages Gerlicher and OK Lakes sought to recover from Pinion did not arise from an accident or "occurrence" as required by the policies. In the alternative, NAICO argued that coverage was precluded pursuant to several applicable

reinforced with fiberglass mesh for added strength; and (3) a durable finish coat—typically using acrylic co-polymer technology. *See* http://www.eima.com/abouteifs/eifsis/ (last visited May 16, 2011).

2. The report contained the following description of the building: "engineered metal structure built on a slab on grade engineered foundation. The lower section of the exterior structure is

brick veneer, the middle section that houses all the windows is an inset Exterior Insulating Finishing System (EIFS), and the upper portion is metal siding."

3. Pinion was insured pursuant to four CGL policies issued by NAICO, all of which contain substantially the same provisions.

policy exclusions, which excluded coverage for the damages sought, including exclusions for (1) damages arising from EIFS, (2) damages arising from mold or mildew, (3) building related illness, (4) damages arising from Pinion's work or work product and (5) damages arising from contract. In their response and objection to NAICO's motion, Gerlicher and OK Lakes complained that NAICO sought to avoid its duty to Pinion under the policies through "conclusory statements and observations ... regarding the applicability of these exclusions to the facts currently known." Although they did not dispute the findings of the MBA Technologies report, Gerlicher and OK Lakes disputed NAICO's "characterization of causes of damage." They claimed that unresolved issues of material fact remained regarding "the mechanism" of the damage to the property that precluded entry of judgment in NAICO's favor. They argued that because EIFS was "but one of the 3 primary causes" of damages to the building identified in the report, the district court should apply the "efficient proximate cause" doctrine and deny NAICO's motion.

¶ 6 In the journal entry of judgment filed February 18, 2010, the district court granted NAICO's motion for summary judgment based on the determination that NAICO had no duty to defend or indemnify Pinion in the federal court action and that "no coverage exists under the [CGL policies] for any judgments that may be obtained by Gerlicher and/or OK Lakes in the underlying action." From this judgment, Gerlicher and OK Lakes appeal.

## STANDARD OF REVIEW

¶ 7 Summary judgment may only be granted when there is no substantial controversy as to any material fact, and one of the parties is entitled to judgment as a matter of law. *Jennings v. Badgett*, 2010 OK 7, ¶¶ 4–5, 230 P.3d 861, 864. We review a grant of summary judgment de novo, that is, without deference to the district court's ruling. *Id.*

¶ 8 "Insurance policies are contracts interpreted as a matter of law." *BP*

*America, Inc. v. State Auto & Cas. Ins. Co.*, 2005 OK 65, ¶ 6, 148 P.3d 832, 835. *Max True Plastering Co. v. United States Fidelity and Guar. Co.*, 1996 OK 28, ¶ 20, 912 P.2d 861, 869; *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 12, 812 P.2d 372, 376. We also review questions of law de novo. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by the Oklahoma Supreme Court).

## ANALYSIS

¶ 9 Gerlicher and OK Lakes claim that the district court erred in granting summary judgment to NAICO, and identify these specific issues in their petition in error: (1) whether the damages they asserted against Pinion qualified as an "occurrence" under the NAICO policy; (2) whether all the damage, which was due to multiple causes, was excluded by the EIFS Exclusion; (3) whether the "Your Work" Exclusion applied if damages complained of were caused by work performed by a subcontractor; and (4) whether the "efficient proximate cause" doctrine applied so as to provide coverage for the damages they asserted.

### I. Relevant Terms of the NAICO CGL Policy

#### A. General Declarations

¶ 10 The four CGL policies in this case contain the following general declarations of insurance coverage:

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY

DAMAGE LIABILITY

1. Insuring Agreement.

a. We [NAICO] will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. Howev-

er, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b. This insurance applies to . . . "property damage" only if:

(1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The . . . "property damage" occurs during the policy period. . . .

SECTION V DEFINITIONS

. . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

B. The EIFS Exclusion [4]

¶ 11 Each of the NAICO policies contains an identical exclusion for damages arising from EIFS and a "Policyholder Notice" relating to that exclusion. The EIFS "Policyholder Notice" in each policy provides:

**EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS) EXCLUSION**

Your liability policy contract includes the EXCLUSION—EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS) endorsement. This endorsement excludes liability coverage for damages that arise out of any work that you do, work that is done on your behalf or any other activity related to an "exterior insulation and finish system" (commonly called EIFS) or related to a "direct applied exterior finish system (commonly called DEFS). This includes any damage to a building or structure caused by the intrusion of water or

moisture through an EIFS or DEFS system for which you may be held responsible. Please refer to the EXCLUSION—EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) endorsement for further details.

The EIFS exclusion in each of the four policies provides:

EXCLUSION—EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1. This insurance does not apply to "bodily injury", "property damage", "personal injury and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, the following:

a. The design, manufacture sale, service, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction or replacement of an [EIFS] system or "direct-applied exterior finish system" or any part thereof, or any substantially similar system of any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with such a system and including any method or procedure used to correct problems with installed or partially installed systems, that was performed by or on behalf of any insured; or

b. Any work or operations conducted by or on behalf of any insured on or to an [EIFS] system or "direct-applied exterior finish system" any component thereof, or any component of a building or structure to which an [EIFS] system or "direct-

---

4. For reasons discussed in Part III of this Opinion, we have found the EIFS Exclusion applies, and its application is dispositive.

applied exterior finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture into any part of the building or structure on which you perform such work or operations.

This exclusion shall also apply to any "bodily injury" or "property damage" for which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract."

SECTION V—DEFINITIONS is amended to include the following:

a. "exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of the structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and

3. A reinforced or unreinforced base coat; and

4. A finish coat providing surface texture and color; and

5. Any flashing, caulking or sealant used with the system.

. . . .

## II. General Rules of Construction

¶ 12 In *BP America,* the Court set forth the "well-settled Oklahoma standards for insurance contract construction." 2005 OK 65, ¶¶ 5–6, 148 P.3d at 835–36.

Parties may contract for risk coverage and will be bound by policy terms. When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions. The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof. This Court may not rewrite an insurance contract to benefit either party. It is the insurer's responsibility to draft clear provisions of exclusion. We will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered. Furthermore, a split in authority over whether a certain term is ambiguous will not, in itself, establish an ambiguity nor will the fact that the parties disagree, as the issue is one of law for the Court.

*Id.* ¶ 6, 148 P.3d at 835–36 (footnotes omitted). *See Dodson v. St. Paul Ins. Co.,* 1991 OK 24, 812 P.2d 372. Further, " '[t]he construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.' " *Id.* ¶ 11, 812 P.2d at 376 (quoting *Wiley v. Travelers Ins. Co.,* 1974 OK 147, ¶ 16, 534 P.2d 1293, 1295). Whether an insurance contract is ambiguous is a matter of law for the Court to decide. *Id.* ¶ 12. If the terms are "unambiguous, clear, and consistent," then they "are accepted in their plain and ordinary sense. . . ." *Id.* Policy language is ambiguous if it is reasonably susceptible to more than one meaning on its face. *Id.,* 812 P.2d at 376–77; *Littlefield v. State Farm Fire and Cas. Co.,* 1993 OK 102, ¶ 7, 857 P.2d 65, 69.

¶ 13 In addressing the question of whether the CGL policy provides coverage for the damages Gerlicher and OK Lakes have sought to recover from Pinion, we bear in mind that "[t]he general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson,* 1991 OK 24, ¶ 13, 812 P.2d at 377 (footnote omitted). "[A]n exclusion is a provision that eliminates coverage where, were it not for the exclusion, coverage would have existed" under the insurance policy. *Id.* at n.

11. "[P]olicy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." *Id.* ¶ 13, 812 P.2d at 377 (footnote omitted). "In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." *Id.* (footnote omitted).

## III. Interpretation of Relevant Provisions

■ ¶ 14 The EIFS Exclusion is clear, unambiguous, and effectively denies coverage for the loss claims asserted against Pinion.[5] In order to find an ambiguity in the EIFS Exclusion, this Court would be required to engage in a strained and unnatural construction of the exclusion, something that Oklahoma law does not permit. *See id.* ¶ 12, 812 P.2d at 376.

¶ 15 We note that in *Nat'l Am. Ins. Co. v. Okemah Mgmt. Co.,* 2008 OK CIV APP 58, 189 P.3d 1223, another Division of this Court construed the identical EIFS exclusion in a NAICO CGL policy and determined that it did not provide coverage for the insured subcontractor, Okemah, for property damage claims allegedly arising out of the EIFS Okemah installed in a commercial building. As in this case, NAICO filed an action seeking a declaratory judgment that it was not required to defend or indemnify the insured. NAICO filed a motion for summary judgment, arguing, among other things, that various exclusions in the policy precluded coverage. The district court granted NAICO's

motion and entered judgment in its favor. On appeal, the Court reviewed the Policy Holder Notice and EIFS Exclusion, noting that they clearly excluded "coverage for damages that 'arise out of any work that you do ... related to an [EIFS] system.... This includes any damage to a building or structure *caused by the intrusion of water or moisture* through an EIFS system for which you may be held responsible.'" (emphasis supplied by the Court). In affirming the district court's grant of summary judgment to NAICO, the Court of Civil Appeals stated:

> Okemah is being sued for property damage allegedly arising out of the EIFS system it installed. That is the only basis for Okemah's potential liability. However, any damage caused by the installation, application, *etc.*, of an EIFS system is specifically and unambiguously excluded from coverage under its insurance policies with NAICO whether or not Okemah (or any other contractor or subcontractor) is ultimately found liable. The trial court properly granted summary judgment to NAICO, finding there is no coverage under these policies.

*Id.* ¶ 10, 189 P.3d at 1225–26 (footnote omitted). The Court further held that NAICO did not have a duty to defend Okemah because "[t]here is simply no duty to defend when there is no coverage for the claims in the underlying suit." *Id.* ¶ 11, 189 P.3d at 1226.

¶ 16 We find the Court's analysis and holdings in *Okemah* persuasive.[6] Any coverage that might be afforded pursuant to the insur-

---

5. Allegations in the federal court complaint included: (1)"[T]he Building was experiencing water leaks, exposing the Building to continuous and substantial water intrusion and high levels of moisture"; (2) "The water intrusion and high levels of moisture have damaged the Building, including without limitation widespread mildew, decay, mold, rotting and degradation of interior air quality"; and (3) "Defects in the construction performed by Pinion caused these water leaks, water intrusion and high levels of moisture." As noted above, Gerlicher and OK Lakes did not dispute the findings of the MBA Technologies report, which concluded that the building's moisture problem resulted from the improper slope of the brick ledge at the "vulnerable intersection"

between the EIFS and the brick, allowing water to collect against the ledge and the EIFS and the windows installed in the EIFS. Further, deteriorated caulking and holes and cracks at the interface of EIFS and the windows allowed "moisture to enter the interstitial wall cavities during precipitation events." The water entering the wall system because of these factors became "trapped" between the EIFS and the vinyl wall covering applied to the building's interior.

6. Opinions released for publication by order of the Court of Civil Appeals are not binding authority but "shall be considered to have persuasive effect." Okla. Sup.Ct. R. 1.200(c)(2), 12 O.S.2001, ch. 2, app.

ing agreement is clearly excluded by the EIFS Exclusion in the NAICO policies. In light of this finding, we do not address the arguments raised by the parties related to the other policy exclusions.[7]

## IV. Efficient Proximate Cause Doctrine

¶ 17 Gerlicher and OK Lakes maintain that the "efficient proximate cause" doctrine applies in this case and precludes the grant of summary judgment in favor of NAICO. The efficient proximate cause doctrine applies when at least two identifiable causes combine to form a single property loss, and one is covered under the policy while the other one is excluded under the policy. *See Kelly v. Farmers Ins. Co.*, 281 F.Supp.2d 1290, 1295–96 (W.D.Okla.2003). "If the cause which is determined to have set the chain of events in motion, the efficient proximate cause, is covered under the terms of the policy, the loss will likewise be covered." 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 101:45 (3rd ed. 2010) (footnote omitted).

¶ 18 The efficient proximate cause doctrine has been applied in Oklahoma. *See Shirey v. Tri–State Ins. Co.*, 1954 OK 214, 274 P.2d 386. In *Shirey*, the insured was driving his vehicle during a wind of terrific force and velocity. Ice was on the road. The wind blew the vehicle from the north to the south side of the road and turned it sideways across the road. The force of the wind then blew the vehicle into a ditch and against an embankment. The policy insured against the peril of wind but excluded coverage for collision and upset. The Court held that the insured could recover where the windstorm was the "efficient and proximate cause" of the damage to the vehicle even if the damage may have been incidentally and indirectly contributed to by other causes. *Id.* ¶¶ 8–14,

274 P.2d at 388–89. *See Duensing v. State Farm Fire and Cas. Co.*, 2006 OK CIV APP 15, 131 P.3d 127 (noting the doctrine of efficient proximate cause was last recognized by the Court in *Shirey v. Tri–State* and explaining that the doctrine applies when the insured demonstrates that the proximate cause of the loss is covered under the policy; the entire loss is covered notwithstanding the fact that an event in the chain of causation was specifically excluded from coverage).

¶ 19 Gerlicher and OK Lakes argue that application of the efficient proximate cause doctrine in this case requires a determination of whether some covered risk was the efficient proximate cause of the damage to the building, even though the covered risk might have combined or interacted with the EIFS. They insist that this determination must be made by a jury. We find, however, that the district court did not err in granting NAICO summary judgment and determining, as a matter of law, that no coverage exists under the policies for damage claims asserted by Gerlicher and OK Lakes.

¶ 20 It is true that the issue of proximate cause in insurance coverage cases has generally been determined to be a question of fact for jury resolution. *See Kelly*, 281 F.Supp.2d at 1290 (where policy contained mold exclusion but provided coverage for water damage from ruptured pipes). But even if multiple factors caused and/or contributed to the damages resulting from water intrusion alleged by Gerlicher and OK Lakes, this would not take the claimed damages outside of the plain and unambiguous language of the EIFS Exclusion in the NAICO CGL policy. The EIFS Exclusion begins with a provision that clearly states the policy "does not apply to 'property damage' ... that arises out of, is caused by, or is attributable to [EIFS] whether in whole or in part." The EIFS Exclusion is neither masked by technical or

---

7. The district court's order directing NAICO to prepare the journal entry contained this finding: "Defective workmanship that results in damages only to the work product itself is not an 'occurrence' under a commercial general liability policy." We do not determine in this Opinion whether the moisture intrusion due to alleged defective workmanship that led to interior and structural damage constitutes an "occurrence" as defined in the CGL policies. Nor do we determine the applicability of the mold and mildew and work product policy exclusions that NAICO also relied on in support of its motion for summary judgment.

obscure language nor hidden in the policy. Indeed, it is prominently displayed by a separate "Policyholder Notice" regarding the EIFS Exclusion-that the CGL policy excludes liability coverage for damages that arise out of any work done by Pinion, work done on Pinion's behalf, "or any other activity related to" EIFS including "any damage to a building or structure caused by the intrusion of water or moisture" through an EIFS system. The only reasonable construction of the exclusion is that when more than one cause is involved in a loss that includes EIFS, whether directly or indirectly, there is no coverage regardless of whether the causes acted concurrently or in any combination with EIFS. When loss is caused by both covered perils and EIFS, the NAICO policy contains language that expressly precludes coverage and avoids application of the efficient proximate cause doctrine. The arguments of Gerlicher and OK Lakes made in reliance on the doctrine must fail.

¶ 21 "The majority of jurisdictions permit the parties to an insurance contract to contract out of the efficient proximate cause doctrine." 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 101:45 (3rd ed. 2010) (footnote omitted). *See Kelly*, 281 F.Supp.2d at 1298-99 (wherein the Court noted that among jurisdictions adopting the doctrine, most permit parties to "contract around" it). Gerlicher and OK Lakes have not argued that permitting parties to "contract around" the efficient proximate cause doctrine is prohibited under Oklahoma law. We note that in *Kelly*, the federal court examined the Oklahoma Supreme Court's decision in *Shirey* and found that it "does appear to suggest, that contracting around the efficient proximate cause doctrine is permissible." *Kelly*, 281 F.Supp.2d at 1299 (citing *Shirey*, 1954 OK 214, ¶¶ 15-16, 274 P.2d at

389). The *Shirey* Court's reliance on and quotation of *Fidelity–Phenix Fire Ins. Co. of N.Y. v. Bd. of Educ. of Town of Rosedale*, 1948 OK 223, ¶¶ 6-7, 204 P.2d 982, 983, indicates that the efficient proximate cause doctrine applies absent "definition or limitation in the policy," and if the insurer "desires to limit its liability ... it should incorporate its proposed standard in the policy by clear terms." *See Shirey*, 1954 OK 214, ¶¶ 15-16, 274 P.2d at 389.

¶ 22 Further, in *Duensing v. State Farm Fire and Cas. Co.*, 2006 OK CIV APP 15, 131 P.3d 127, the Court, in construing the provisions of a homeowner's policy, recognized that the "foremost principle" of Oklahoma law governing insurance coverage disputes "is that an insurance policy is a contract," and parties are generally "at liberty to contract for insurance to cover such risks as they see fit" and will be "bound by terms of the contract." *Id.* ¶ 18, 131 P.3d at 134. The Court then concluded that specific policy language negating the efficient proximate cause doctrine was enforceable: " '[w]e do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.' " *Id.* ¶ 17, 131 P.3d at 133-34. The Court based this conclusion on its finding that the language of the lead-in clause to the policy's earth movement exclusion was unambiguous and "the only fair construction" was, when more than one cause was involved in a loss that included earth movement, there was "no coverage regardless of whether the causes acted concurrently or in any sequence with the excluded event." *Id.* ¶ 21, 131 P.3d at 134.[8] Because the lead-in clause of the earth movement exclusion was "neither masked by technical or obscure language nor

---

8. A second exclusion in the Duensing policy was introduced instead by the words: "We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more perils listed ... below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination

of these." The Court held that this language, unlike the lead-in clause for the earth movement exclusion, was not sufficient to avoid application of the efficient proximate cause doctrine, and was not enforceable to exclude coverage where a loss was caused by a combination of covered and excluded perils. *Id.* ¶¶ 31-33, 131 P.3d at 136-37.

hidden in the policy" the Court found that the policy "clearly and unambiguously avoids application of the efficient proximate cause doctrine." *Id.*

¶ 23 We are persuaded by *Duensing* and find that the EIFS exclusion in the NAICO policy is enforceable, unambiguous and applies to preclude coverage where the building was damaged by a combination of, or interaction between, EIFS and other perils that might otherwise be covered.

## CONCLUSION

¶ 24 Based on our review of the record and applicable law, and for the reasons set forth above, we affirm the district court's grant of NAICO's motion for summary judgment. NAICO has no duty to defend or indemnify Pinion against the claims for damages asserted by Gerlicher and OK Lakes because they are excluded from the coverage afforded by the CGL Policy according to the clear and unambiguous terms of the EIFS Exclusion. The district court did not err in concluding that the claims asserted within the underlying federal court action fell within the EIFS exclusion.

¶ 25 **AFFIRMED.**

BARNES, P.J. and WISEMAN, J., concur.