**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MID-CONTINENT CASUALTY
COMPANY,

      Plaintiff - Appellant,

v.

UNION INSURANCE COMPANY,

      Defendant - Appellee.

No. 11-6045
(D.C. No. 5:09-CV-00666-W)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **MATHESON**, Circuit Judges, and **FREUDENTHAL**,[†] District
Judge.

This appeal stems from an explosion that severely injured Robbie Griffin at a

worksite in Stephens County, Oklahoma. At the time of the explosion, Mr. Griffin was

working as an independent contractor for S&W Transports, Inc. Through a settlement

agreement, S&W will pay Mr. Griffin for his injuries. The issue is which of S&W's

insurers must provide coverage for that payment. Mid-Continent Casualty Company

---

      * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

      † The Honorable Nancy D. Freudenthal, Chief United States District Judge for the
District of Wyoming, sitting by designation.

covered S&W under a general commercial insurance policy. Union Insurance Company covered S&W under a commercial umbrella insurance policy. Mid-Continent and Union agree that if Mr. Griffin caused, in whole or in part, his injuries, Mid-Continent must provide coverage. If not, Union provides coverage.

Both companies moved for summary judgment in the district court. The court held that Mr. Griffin caused his injuries under Oklahoma insurance law and granted summary judgment for Union. Mid-Continent appealed.

Because we agree that Mr. Griffin caused, at least in part, his injuries, we affirm.

## I. BACKGROUND

### A. *The Explosion*

At the time of the explosion, Robbie Griffin was employed as an independent subcontractor for S&W Transports, Inc. S&W had entered into a Master Work or Service Contract ("MWSC") to perform work for Noble Energy, Inc.[1] Noble operated the worksite in Stephens County, Oklahoma where Mr. Griffin was working when the explosion occurred.

The parties rely on Mr. Griffin's deposition testimony to recount the events leading to the explosion. On December 8, 2008, Mr. Griffin was tasked with cleaning an electrostatic heater treater, a machine that treats oil to remove water. He was wearing his usual work clothes: a long-sleeved shirt, a t-shirt, and jeans.

---

[1] S&W initially entered into the MWSC with Samedan Oil Company in 1982. Noble subsequently merged with Samedan and took on its obligations under the MWSC.

To clean the treater, Mr. Griffin first pulled up the bull plug so that the treater could be vacuumed. Next he used his impact wrench to unhook and remove the treater's south plate. He then removed the hatch on the east side of the treater. This required removing the bolts off the hatch and using a screwdriver to pry the access plate off the gasket. After the plate was separated from the treater, he signaled to the operator of a nearby backhoe to swing its boom.

As soon as the plate had been removed, Mr. Griffin heard a "big boing, just . . . like a gigantic spring going off." ROA at 146. The treater exploded. Mr. Griffin recalls seeing "gray stuff" floating through the air. *Id.* His next memory was standing, somewhere east of the treater, trying to "get something burning out of [his] skin." *Id.* He was taken to the hospital, where he was treated for severe burn injuries.

## B. *The Settlement*

Mr. Griffin sued Noble, alleging that Noble's negligence caused his injuries. Under the MWSC, S&W had assumed Noble's tort liability for injuries to S&W's subcontractors. Because Mr. Griffin was employed as an independent subcontractor of S&W, the parties agreed that the MWSC applied to Mr. Griffin's work at the time of the explosion and thus applied to his injuries. Therefore, when Mr. Griffin sued Noble, Noble sought indemnification from S&W. S&W in turn requested coverage from its insurers, Mid-Continent Casualty Company and Union Insurance Company.

The parties agreed to a settlement that resolved every issue except whether Mid-Continent or Union is responsible to provide coverage for S&W's payment to Mr.

3

Griffin. The district court realigned the two remaining parties so that Mid-Continent became the plaintiff, and Union became the defendant. The dispute between Mid-Continent and Union hinges on the language of the insurance policy Mid-Continent issued to S&W.

## C. *The Insurance Policy*

Mid-Continent had issued S&W a commercial general liability policy ("Policy"). Union had issued S&W a commercial umbrella policy. Umbrella policies generally fill the gaps where a general liability policy does not provide coverage. The issue is whether Mid-Continent's Policy covers S&W's payment to Mr. Griffin.

The Policy contains "exclusions," which limit Mid-Continent's coverage. The exclusions in turn contain "exceptions," which limit the scope of an exclusion and broaden Mid-Continent's coverage. If an event is listed in an exception to an exclusion, Mid-Continent must cover that event.

This case involves an exception to an exclusion in the Policy. The "Contractual Liability Exclusion" limits coverage for, among other events, bodily injury arising from a contractual assumption of liability. The "Insured Contract Exception" narrows the Contractual Liability Exclusion so that Mid-Continent covers S&W's contractual assumption of liability if S&W assumes that liability as part of an "insured contract."

The Contractual Liability Exclusion in the Policy provides: "This insurance does not apply to: . . . 'Bodily injury' . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract . . ." *Id.* at 70-71.

4

The Insured Contract Exception to the Contractual Liability Exclusion provides: "This exclusion does not apply to liability for damages: . . . Assumed in a contract that is an 'insured contract' . . . ." *Id.* at 71.

Due to the Contractual Liability Exclusion, Mid-Continent generally does not provide coverage for bodily injuries for which S&W (the insured) has assumed liability in a contract. But, due to the Insured Contract Exception to the Contractual Liability Exclusion, Mid-Continent provides coverage if S&W assumed that liability as part of an insured contract.

The term "insured contract" is defined in an amendment to the Policy:

> That part of any other contract . . . pertaining to [the insured's] . . . business . . . under which [the insured] assume[s] the tort liability of another party to pay for "bodily injury" . . . to a third person or organization, provided the "bodily injury" . . . is caused, in whole or in part, by [the insured] or by those acting on [the insured's] behalf. Tort liability means a liability that would be imposed by law in the absence of any contract . . . .

*Id.* at 85.

S&W (the insured) assumed the tort liability of Noble (another party) to pay for bodily injury to Mr. Griffin (a third party). Whether the event in this case is part of an insured contract—and thus, whether Mid-Continent must provide coverage—depends on whether the bodily injury was "caused, in whole or in part, by" Mr. Griffin, who was acting on S&W's behalf.

Mid-Continent and Union agree that, if Mr. Griffin caused, in whole or in part, his injuries, then (1) his injuries were part of an insured contract, (2) the Insured Contract

5

Exception to the Contractual Liability Exclusion therefore applies, and (3) Mid-Continent must provide coverage. The parties likewise agree that if Mr. Griffin did not cause, in whole or in part, his injuries, then Mid-Continent does not provide coverage, and Union's umbrella policy does so.

**D.** *Post-Settlement Proceedings in the District Court*

Mid-Continent and Union filed cross-motions for summary judgment in the district court.

Mid-Continent offered deposition testimony from Mr. Griffin, S&W President Kenny Eason, and Noble foreman Dee Ellis. Each denied in his deposition that Mr. Griffin caused his injuries. Mid-Continent argued that, because "cause" was to be interpreted in its plain and ordinary meaning, the court could rely on these deposition statements to conclude that Mr. Griffin did not cause his injuries.

Union relied on expert reports from engineers Jack Hyde and Roger Craddock. Both analyzed the cause of the fire and Mr. Griffin's injuries. Mr. Hyde explained that the fire was ignited "when fuel was introduced into the oxygen/ignition-source scenario at the moment Mr. Griffin removed the east access plate from the subject heater-treater." *Id.* at 230. Mr. Hyde also stated that "[h]ad Mr. Griffin not removed the [east] access plate, the deflagration would not have occurred as it did." *Id.* Mr. Craddock stated that Mr. Griffin "contributed to the burn injuries he suffered by failing to wear appropriate personal protective equipment." *Id.* at 232. Union argued that whether Mr. Griffin "caused" his injuries meant simply whether he was the cause-in-fact of his injuries.

6

Union contended that the expert reports and Mr. Griffin's own testimony about the events leading to the explosion were sufficient to prove that Mr. Griffin caused his injuries.

The district court issued an order on February 3, 2011. [*Id.* at 292.] Applying Oklahoma law, the court defined "cause" in its plain and ordinary usage to mean "be the cause of, effect, bring about; occasion, produce; induce." *Id.* at 296. The court concluded, based on the expert reports and Mr. Griffin's deposition, that there was no genuine dispute of material fact and that Mr. Griffin caused, at least in part, his injuries. The court denied Mid-Continent's motion for summary judgment and granted Union's motion for summary judgment.

Mid-Continent appealed the district court's grant of Union's motion for summary judgment.[2]

## II. DISCUSSION

### A. *Jurisdiction and Standard of Review*

The district court had diversity jurisdiction under 28 U.S.C. § 1332. Because the district court entered a final judgment when it granted Union's motion for summary judgment, we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court, drawing all reasonable inferences in favor of the nonmoving party." *Hull v. I.R.S.*, — F.3d —, 2011 WL 3835402, at *3 (10th Cir.

---

[2] Mid-Continent is not appealing the district court's denial of its motion for summary judgment. *See* Aplt. Opening Br. at 3-4.

7

Aug. 31, 2011).  A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

**B.** *Causation in Oklahoma Insurance Law*

We apply Oklahoma law because in a "diversity action we apply the substantive law of the forum state."  *Cohen-Esrey Real Estate Serv., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011).  Under Oklahoma's choice-of-law rule, the interpretation of an insurance contract "is governed by the law where the contract is made."  *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 793 (Okla. 1991).  Because the Policy was made in Oklahoma, we apply Oklahoma insurance law.

The Oklahoma Supreme Court has held that "[i]nsurance policies are contracts interpreted as a matter of law."  *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005).  In the interpretation of an insurance policy, "[w]hen policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning."  *Id.*

In insurance law, "[t]he rule of causation as applied in the context of insurance coverage is proximate cause."   7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 101:39 (3rd ed. 2011).  "'Proximate cause' has a different meaning and applications in the area of insurance law than it has in tort law."  *See id.* § 101:40.  In insurance law, proximate cause "bears no relationship with the determination of 'culpability' or the explanation for why the injury took place."  *Id.*  Proximate cause in insurance law is used

8

to "determin[e] whether the specific type of injury caused by the specific type of physical act or event was intended to be covered under the terms of the subject policy." *Id.*

Oklahoma courts have addressed causation in insurance coverage suits where the parties disputed which of multiple causes of an event was the proximate cause. To determine which cause was proximate cause, Oklahoma courts follow the "efficient proximate cause" doctrine, which defines the proximate cause as the cause "'that sets the other causes in operation; incidental causes are not proximate though they may be nearer in time and place to the loss.'" *Duensing v. State Farm Fire and Cas. Co.*, 131 P.3d 127, 133 (Okla. Civ. App. 2005) (quoting *Shirey v. Tri-State Ins. Co.*, 274 P.2d 386, 389 (Okla. 1954)). "[T]he efficient proximate cause doctrine applies absent definition or limitation in the policy." *Nat'l Am. Ins. Co. v. Gerlicher Co., LLC*, — P.3d —, 2011 WL 3903246, at *7 (Okla. Civ. App. June 30, 2011) (quotation omitted).[3]

## C. *Application to this Case*

Union Insurance Company is entitled to summary judgment. According to Mr. Hyde's report, the explosion occurred "when fuel was introduced into the oxygen/ignition-source scenario at the moment Mr. Griffin removed the east access plate from the subject heater-treater." ROA at 230. Mr. Griffin's removal of the east access

---

[3] The rule that terms of an insurance contract be interpreted in their plain and ordinary meaning is consistent with the rule that the term "cause" in insurance contracts means efficient proximate cause. Oklahoma courts have cited the plain and ordinary meaning rule before conducting an efficient proximate cause analysis. *See Duensing*, 131 P.2d at 134; *Gerlicher*, 2011 WL 3903246, at *5.

plate was most likely the efficient proximate cause of the explosion.[4]  The removal of the east access plate "set[ ] the other causes in operation."  *See Shirey v. Tri-State Ins. Co.*, 274 P.2d at 389.

But we need not decide whether Mr. Griffin's removal of the east access plate was the efficient proximate cause of his injuries because the language of the Policy asks whether Mr. Griffin "caused, in whole or *in part,*" his injuries.  ROA at 85 (emphasis added).  *Gerlicher* supports this conclusion.  In *Gerlicher*, the Oklahoma Court of Civil Appeals interpreted language in an insurance contract that excluded coverage when a loss was "caused by, or is attributable to [improperly installed exterior insulation and finish systems (EIFS)] in whole or in part."  2011 WL 3903246 at *7.  The court held that "[t]he only reasonable construction of the exclusion is that when more than one cause is involved in a loss that includes EIFS, whether directly or indirectly, there is no coverage regardless of whether the causes acted concurrently or in any combination with EIFS." *Id.*

Mr. Hyde's and Mr. Craddock's expert reports suffice to establish there is no

---

[4] Mid-Continent submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) citing *Quadrange Dec. Corp. v. Hartford Ins. Co.*, 645 A.2d 1074 (D.C. 1994) and the Restatement of Torts to argue that cause necessarily entails responsibility. As we explained above, proximate cause for insurance coverage differs from proximate cause in tort law.

genuine dispute that Mr. Griffin's actions were at least a partial cause of his injuries.[5]

Mr. Hyde stated that, "[h]ad Mr. Griffin not removed the [east] access plate, the deflagration would not have occurred as it did." ROA at 230. Mr. Craddock stated that Mr. Griffin "contributed to the burn injuries he suffered by failing to wear appropriate personal protective equipment." *Id.* at 232. Both of these actions were partial causes of Mr. Griffin's injuries.

Mid-Continent's reliance on the depositions of Mr. Griffin, Mr. Eason, and Mr. Ellis is unavailing for two reasons. First, Mr. Eason and Mr. Ellis are not experts and had no personal knowledge of the explosion. Mr. Eason and Mr. Ellis were not on the site at the time of the explosion.

Second, Mr. Griffin's deposition testimony is consistent with the conclusion that his actions were at least a partial cause of his injuries. Mr. Griffin stated in his deposition that he removed the east access plate and that he was wearing a long-sleeve shirt, a t-shirt, and jeans at the time of the explosion. In fact, Mr. Hyde's and Mr. Craddock's conclusions that Mr. Griffin's actions contributed to his injuries rely on his account. Mr. Griffin's deposition, therefore, confirms rather than casts doubt on the proposition that he caused, at least in part, his injuries.

---

[5] Mid-Continent argued in its opening brief that the district court could not rely on Mr. Hyde's and Mr. Craddock's reports because they were not sworn statements. Both reports were verified, and verified statements have the legal effect of sworn statements. *See* 28 U.S.C. § 1746.

## III. CONCLUSION

Under the Policy, Mr. Griffin caused, at least in part, his injuries. The Insured Contract Exception to the Contractual Liability Exclusion in the Policy applies, and Mid-Continent owes coverage to S&W for its payment to Mr. Griffin. We affirm the district court's grant of Union's motion for summary judgment.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

12