HOME FIRST v. MID-CONTINENT CASUALTY CO.
2022 OK CIV APP 12
510 P.3d 1289
Case Number: 116593
Decided: 08/13/2020
Mandate Issued: 04/27/2022
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2022 OK CIV APP 12, 510 P.3d 1289

 

HOME FIRST, INC,. an Oklahoma corporation, Plaintiff/Appellee,
v.
MID-CONTINENT CASUALTY COMPANY, an Oklahoma Corporation, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE LEAH EDWARDS, TRIAL JUDGE

REVERSED AND REMANDED

Richard C. Ford, CROWE & DUNLEVY, Oklahoma City, Oklahoma, and
David B. Donchin, Andrew M. Gunn, Oklahoma City, Oklahoma, for Defendant/Appellant,

Blake Sonne, SONNE LAW FIRM, PLC, Norman, Oklahoma, and
Tony Gould, George Brown, BROWN & GOULD, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Barbara G. Swinton, Vice-Chief Judge:

¶1 Defendant/Appellant Mid-Continent Casualty Company (Defendant or MCC) appeals from a jury verdict in favor of Plaintiff/Appellee Home First, Inc. (Plaintiff or Home First) on its breach of contract, bad faith, and punitive damages claims. MCC argues that the trial court erred in sending Home First's claims to the jury because there was no coverage and therefore, no duty to defend. We agree, reverse the judgment, and remand with instructions to enter judgment for MCC.

BACKGROUND

¶2 Home First contracted with the Rodgers (Homeowners) for the construction of a home in Moore, Oklahoma. Homeowners moved into the house in March 2006. Shortly thereafter, Homeowners noticed a white powdery substance on the portion of the concrete stem wall visible in the garage. They contacted Home First, who advised them it was efflorescence, not uncommon, and not a problem. Three years later, they noticed the issue was still present, and contacted Home First again, through its principal David Tucker (Tucker), telling him that the stem wall was still deteriorating. MCC asserts that there was no claim at the time, or through the present, that any other part of the house was manifesting damage.

¶3 Home First then filed a claim with MCC under its commercial general liability (CGL) policy (the Policy). MCC issued a reservation of rights letter and commenced an investigation. Through its investigation, MCC concluded that there was no detectable damage to any part of the house other than the stem wall. MCC hired a structural engineer, David Gastgeb, to analyze the stem wall issues. He concluded that the concrete in the stem wall was improperly mixed or poured so that it had too much water, causing the stem wall deterioration.

¶4 As a result, MCC denied coverage in December 2009, asserting that the claim for the defective stem wall did not meet the definition of property damage resulting from an occurrence, and identified exclusions that would be applicable. This included the contractual liability exclusion.

¶5 The Homeowners then filed suit against Home First, the concrete supplier, and concrete subcontractor in October 2010, alleging defective construction and a resulting decline in the value of their home (the Rodgers case). Homeowners asserted that the "claims specifically relate to material deficiencies in the stem wall" of the home constructed by Home First with "defective materials and substandard labor," and included claims of negligence, breach of contract, breach of warranty, and violation of building codes. Home First sent the petition to MCC with a demand to defend. MCC stood on its denial of coverage, and asserted that absent new information, it would not defend the lawsuit on behalf of Home First.

¶6 Following this denial, Home First initiated the instant suit on September 22, 2011 for breach of contract and bad faith. Home First then moved for partial summary judgment that MCC had a duty to defend under the Policy. It argued that the Policy provided coverage because the defective stem wall constituted property damage, the need to remove non-defective property to repair the stem wall constituted property damage, and that the exclusions were legally inapplicable. In response, MCC argued that its position was based upon Oklahoma precedent, namely Dodson v. St. Paul Ins. Co., 1991 OK 24812 P.2d 372Dodson, CGL policies were intended to provide coverage for accidental injury to person or property resulting from an insured's actions, but not to provide coverage for poor workmanship that resulted in the insured's products or work being worth less than they otherwise would have been. MCC argued that Dodson would apply to Home First's claims because the Homeowners' alleged damage was caused by defective products or workmanship, a contractual liability, or, in other words, a business risk assumed by Home First.

¶7 Ultimately, the trial court granted Home First's motion, finding that the business risk doctrine was invalidated by a "subcontractor exception" to the "your work" exclusion adopted in 1986 revisions to the standard form CGL policy. In the order granting the motion, the trial court ruled that MCC should have defended the Rodgers case on behalf of Home First.

¶8 A trial in this case was set for April 2016. Prior to trial, the court announced that, on its own motion, the case would be bifurcated and the breach of contract and bad faith claims would be tried separately. During the first trial, on the breach of contract claim, MCC demurrered to the evidence, and later moved for a directed verdict on the duty to defend and duty to indemnify. MCC's arguments on these issues were related to the coverage determinations made earlier by the trial court; specifically, MCC argued that because there was no resulting damage, there was no coverage for the claims at issue and therefore, no duty to indemnify. Because there was no duty to indemnify, MCC argued, there was no duty to defend. The trial court denied each of these requests. Home First also moved for a directed verdict on the claim of breach of the duty to defend; it was granted as to the issue of breach, but left damages to the jury.

¶9 The trial court instructed the jury that the court already determined MCC had a duty to defend Home First in the Rodgers suit, and that MCC breached that duty. The trial court further instructed the jury that to find covered physical injury, the jury must "find that the home sustained damage other than to the defective stem wall whether other resulting physical damage or that the home sustained physical damage due to the necessity of having to repair or replace the stem wall itself."

¶10 At the first trial, the jury returned a verdict assessing damages in the amount of $36,000 for breach of the duty to defend, and $398,000 for breach of the duty to indemnify. The second trial, concerning the bad faith claim, took place in February 2017 before a different trial court judge. The jury was not required to determine actual damages for bad faith, but awarded punitive damages in the amount of $434,000, the amount equal to the damages awarded in the first trial. MCC appeals from the judgments entered against it below.

STANDARD OF REVIEW

¶11 MCC argues that the trial court's legal rulings were made in error, which caused the case to be improperly submitted to the jury. MCC also challenges several evidentiary rulings, the trial court's decision to bifurcate the trials, and the award of prejudgment interest.

¶12 In reviewing a judgment on a jury verdict, the judgment will be affirmed if there is any competent evidence to support the verdict. Grumman Credit Corp. v. Rivair Flying Service, Inc., 1992 OK 133845 P.2d 182 Guthrie v. Indep. School Dist. No. 1-30 of Adair County, 1998 OK CIV APP 47958 P.2d 802

¶13 Accordingly, we review de novo the trial court's denial of MCC's motion for directed verdict. Computer Publications, Inc. v. Welton, 2002 OK 5049 P.3d 732De novo review means this Court has "plenary, independent and non-deferential authority to reexamine the trial court's legal rulings." Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n., 1998 OK 113980 P.2d 109Gillham v. Lake Country Raceway, 2001 OK 4124 P.3d 858

ANALYSIS

¶14 MCC's main proposition of error is that the trial court's legal rulings were improper, and therefore, the matter should not have been submitted to the jury at all. Specifically, MCC argues that under Dodson v. St. Paul Ins. Co., 1991 OK 24812 P.2d 3721991 OK 24See Dodson, supra; Hartford Accident & Indem. Co. v. Pacific Mutual Life Ins. Co., 861 F.2d 250, 253 (10th Cir. 1988); Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co., 2015 OK CIV APP 100363 P.3d 1270

¶15 "The relationship between the insured and insurer is contractual in nature." First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland, 1996 OK 105928 P.2d 298Id. An insurer "has no duty to defend unless 'it ascertains the presence of facts that give rise to the potential of liability under the policy.' " National American Ins. Co. v. Okemah Management Co., LLC, 2008 OK CIV APP 58189 P.3d 1223First Bank of Turley, supra, at § 13) (emphasis in original).

¶16 Here, the potential liability in the underlying lawsuit arose out of the installation of the defective stem wall. From the outset of the claims made by Homeowners, MCC maintained that there was no potential of liability under the Policy because the Homeowners' claims sought to recover the cost of repairing or replacing the defective work. If there was no potential for liability under the Policy, MCC did not have a duty to defend. See National American Ins. Co. v. Okemah Management Co., LLC, 2008 OK CIV APP 58189 P.3d 1223

¶17 The Policy includes standard form coverage for liability in damages that Home First incurred as a result of bodily injury or property damage caused by an occurrence, providing:

SECTION I - COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Policy also contained the following exclusion:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Additional exclusions provide that there will be no coverage for " 'property damage' to 'your work' arising out of it or any part of it" or for " 'property damage' to 'impaired property' or property that has not been physically injured arising out of . . . a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.' "

¶18 The Homeowners' claims were, plainly stated, based solely on the defective stem wall, caused by defective materials and substandard labor. Testimony from the Homeowner at trial indicated that there was no damage to any part of the house except to the stem wall. The report completed by MCC following its inspection concluded that the stem wall had water intrusion, but has not damaged any other property. Based upon our review of the Policy and the claims at issue, we find the Policy to be similar to those in the cases cited above finding no coverage under the business risk exclusion.

¶19 In Dodson, the insured builder sought coverage under a CGL policy with insurer for losses associated with a subcontractor's defective workmanship in the construction of a school roof. 1991 OK 24812 P.2d 372Dodson specifically excluded from coverage "liability assumed by the Insured under contract or agreement . . ." Id. at ¶ 5. The court concluded that the policy was not intended to cover the builder's cost for repairing and replacing the defective workmanship and faulty products, noting:

[t]he insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work.

Id. at n. 14. As concluded in Dodson, "we decline to rewrite [the Policy] and transform the contract into a performance bond, or provide coverage for products liability or construction malpractice insurance, where none was originally intended by the parties to the policy." Id. at ¶ 17.

¶20 Home First argues that Dodson is inapplicable because the standard policy at issue there has since been modified. However, our review of relevant case law shows that Dodson has been relied upon since the modification, and we see no reason to find it is inapplicable now.Employers Mut. Cas. Co. v. Grayson, No. CIV-07-917-C, 2008 WL 2278593 (W.D. Okla. May 30, 2008), for the proposition that the term "property damage" within a policy is defined to include the resulting "loss of use" of the property, even property that is not physically injured. Because of this policy definition, Home First argues, the loss of use of other, non-defective components constituted "property damage" within the policy. We find this case distinguishable, however, because it involved an insured that unknowingly supplied a defective product (damage resulted from an "unintended consequence of insured innocently supplying a non-conforming product"); it did not involve alleged defective workmanship to which the business risk doctrine would apply.

¶21 An insurer's duty to defend claims against an insured is a contractual obligation determined by the nature and risks covered by the policy at issue. First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland, 1996 OK 105928 P.2d 298See Badillo v. Mid Century Ins. Co., 2005 OK 48121 P.3d 1080see also OUJI-CIV 22.3.

¶22 We have reviewed the trial court's legal rulings and the record presented. We find that the trial court erred as a matter of law in determining that MCC had a duty to defend, in denying MCC's motion for a directed verdict, and submitting the case to the jury. We therefore reverse the judgments in favor of Home First, and direct the trial court to enter judgment in favor of MCC. Because we reverse the judgment on this ground, we need not reach MCC's additional claims of error.

¶23 REVERSED AND REMANDED.

MITCHELL, P.J., and GOREE, J., (sitting by designation) concur.

FOOTNOTES

12 O.S. § 994

See Abel v. Mid-Continent Casualty Company, appellate case number 112,353 (November 21, 2014) (wherein the same division of this Court, in an unpublished opinion, relied upon Dodson in determining that a similar policy provided no duty to defend a claim concerning a builder's alleged construction defects and faulty workmanship); see also, Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co., 2015 OK CIV APP 100363 P.3d 1270