2015 OK CIV APP 100

**KENTUCKY BLUEGRASS CONTRACTING, LLC,**
Plaintiff/Appellant,

v.

**The CINCINNATI INSURANCE COMPANY, Defendant/Appellee.**

No. 112,464.

Court of Civil Appeals of Oklahoma,
Division No. 3.

June 24, 2015.

Sterling E. Pratt, C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Thomas G. Ferguson, Jr., Walker, Ferguson & Ferguson, Oklahoma City, Oklahoma, for Defendant/Appellee.

Wm. C. HETHERINGTON, Jr., Chief Judge.

¶1 Kentucky Bluegrass Contracting, LLC (KBC) filed this action for breach of contract and duty of good faith and fair dealing (bad faith) against The Cincinnati Insurance Company (Insurer) after the latter denied KBC's claim for coverage and a defense in a federal action. KBC now appeals a trial court order sustaining Insurer's motion for summary judgment. We affirm.

### STANDARD OF REVIEW

¶2 This appeal is governed by and follows the procedure set forth in Oklahoma Supreme Court Rule 1.36, 12 O.S. 2011, ch. 15, app. 1, without appellate briefs. The appellate standard of review for an order granting summary judgment is *de novo. Carmichael v. Beller,* 1996 OK 48, ¶2, 914 P.2d 1051, 1053. When one party is entitled to judgment as a matter of law because there are no material disputed facts, summary judgment will be affirmed. *Id.*

### CASE HISTORY

¶3 According to undisputed facts revealed by the accelerated record, KBC is a construction company formed under Kentucky law. Insurer is an Ohio stock insurance company in the business of "selling general liability insurance to commercial business within the State of Oklahoma." Its agent sold KBC a commercial general liability (CGL) policy, which in relevant part, was effective for three years, "03–06–2007 to 03–06–2010" (the CGL Policy).

¶4 Pursuant to a subcontract with PPR/Lyon's Pride (PPR), KBC agreed to perform "electrical connection work, exterior cladding and interior finishes" at a federal construction project for barracks and officers' quarters at Fort Sill, Oklahoma in 2008. To obtain laborers for the same project, KBC contracted with CLP Resources, Inc. (CLP).

¶5 On some unknown date, PPR rejected KBC's work for "failure to complete the work

as required." Because PPR's charges for completion and/or repair of KBC's defective work exceeded the amount due KBC under the subcontract, it "could not afford to pay CLP for the labor services."

¶6 Seeking payment under their contract, CLP sued KBC in the U.S. District Court of the Western District of Oklahoma, No. CIV–08–1198–M (federal case). KBC subsequently filed a third-party petition against PPR, several sub-contractors, and the general contractor at the Ft. Sill project.

¶7 In June 2009, one "third party defendant" in the federal case, Morgan Building & Spas, Inc., together with its surety, Travelers Casualty & Surety Company of America (collectively, Morgan), filed an answer to CLP's first amended petition joined with a cross-claim against KBC. In pertinent part, Morgan raised the affirmative defenses of KBC's "first and prior breach of contract," accord and satisfaction, and payment.

¶8 In Morgan's cross-claim, it alleged KBC was responsible for "supervising and paying for any contract labor employed by it in the performance of such work" and for "the completion of certain work to PPR's satisfactory inspection," which work PPR rejected and declined to certify "based on failure to complete the work as required." Morgan further alleged "[t]o the extent that [KBC] wrongfully, maliciously, recklessly or in bad faith failed to pay," Morgan was seeking to be "indemnified, reimbursed and held harmless for all losses, expenses and damages incurred by [it] relating thereto, including, without limitation, costs and reasonable attorneys' fees." Morgan prayed for judgment in their favor, recovery of damages in the amount shown by the evidence, and all other relief to which they are entitled.

¶9 In December 2009, KBC submitted a claim to Insurer for coverage and a defense in the federal case. Insurer denied the claim by letter dated January 7, 2010, explaining "there are no claims that would constitute an 'occurrence' in this matter" and, based upon the policy's "Expected or Intended Injury" and "Contractual Liability" exclusions. KBC's counsel responded by letter dated January 15, 2010, claiming Insurer had incor-

rectly focused on CLP's complaint and requesting review of Morgan's cross-claim and reconsideration of the denial. On January 22, 2010, Insurer again denied KBC's claim giving the same reasons.

¶ 10 In October 2011, KBC filed a petition for breach of contract and for bad faith against Insurer in Comanche County District Court (state case), KBC alleged Insurer had unreasonably denied and failed to properly investigate KBC's requests in January 2010 "to defend against Morgan's cross-claim" and "to indemnify [KBC] from any loss incurred as a result of the cross-claim." As a consequence, KBC alleged it had incurred defense costs in the federal case in excess of $75,000.00 and was subjected to damage, contraction of its business, loss of operating funds and required to incur indebtedness to continue operation during the pendency of that case.

¶ 11 Insurer filed an answer in the state case in June 2012, acknowledging receipt of KBC's notice of the pending federal action and admitting its duty under the terms of the CGL Policy to provide a defense to any civil lawsuit filed against KBC for damages resulting from an "occurrence." However, Insurer specifically and generally denied that the cause of action asserted against KBC in the federal case "raised any duty on the part of [Insurer] to provide a defense to [KBC]."

¶ 12 Over a year later, Insurer moved for summary judgment in the state case, arguing

Kentucky law should be applied to interpret the CGL Policy that had been "issued" in that state. Relying on "a recent Kentucky case on point," *Cincinnati Ins. Co. v. Motorists Mutual Ins. Co.*, 306 S.W.3d 69 (Ky. 2010), for holding "claims of faulty workmanship, standing alone, are not 'occurrences' under CGL policies," Insurer argued there was no potential for coverage under the CGL Policy for Morgan's cross-claim because the policy limits coverage to "property damage caused by an 'occurrence'" and "does not extend to allegations relating to the failure to pay or complete work in connection with the project" at Ft. Sill. Based thereon, Insurer argued it is under no duty to defend and/or to indemnify KBC and no bad faith exists.

¶ 13 To support its arguments, Insurer attached the following evidentiary material: a) five pages of the twenty-three page CGL Policy, b) the joint answer/cross-claim filed by Morgan in the federal litigation, c) KBC's counsel's letter dated January 15, 2010 to Insurer,[1] and d) Insurer's second denial letter dated January 22, 2010.[2] Insurer also attached a copy of its Kentucky authority, *Motorists Mutual Ins. Co.*[3]

¶ 14 KBC opposed summary adjudication, arguing a choice of law analysis was unnecessary for lack of a conflict between Oklahoma and Kentucky law at the time Insurer denied its claim, and even if the latter were to

---

1. In pertinent part, the January 15, 2010 letter from KBC's attorney a) states his belief Insurer was "misconstruing both the nature of the Complaint filed against [KBC] and the claim that is being presented by [KBC] as a result"; b) asks Insurer to "reconsider the request by [KBC]"; and c) states Insurer's denial letter "focuses on the **Complaint** filed by [CLP] against [KBC]" but "the claim that [KBC] is making ... is a claim for a defense and indemnity of the **Cross-Claim** filed by [Morgan], which has previously been forwarded to you. [Insurer's] obligation to [KBC] is not determined by the Complaint but the Cross-Claim filed by [Morgan]." (Bold-type in original.)

2. In the January 22, 2010 letter, Insurer's representative, Mr. Kemp, acknowledges receipt of the January 15, 2010 letter from KBC's attorney, states he "reviewed the denial for coverage and a defense of the claim, including reviewing the cross-claim filed against [KBC]" and he also "had the coverage issues reviewed by counsel."

Mr. Kemp stated he continued to believe that there is no coverage for the claim and no duty on its part to provide a defense to the cross-claim. After expressly incorporating the January 7, 2010 denial letter, Mr. Kemp restated the reasons for the denial of coverage for the claim against KBC, *i.e.*, "no 'property damage' caused by an 'occurrence'" and "the exclusion for intended or expected injury and for any contractual liability would apply to defeat coverage even if coverage otherwise existed." He further explained, "it is our conclusion that there is no potential for coverage based on the allegations asserted against [KBC] in either the complaint or the cross-claim ... and no duty to defend."

3. We note for the record the opinion explains it was "rendered" by the Kentucky Supreme Court on March 18, 2010, "released for publication" April 18, 2010, and was "corrected" and again "released for publication" on July 19, 2011.

govern, Insurer's authority was distinguishable on the facts.

¶ 15 KBC also argued the term "occurrence" in the CGL Policy is ambiguous and that several facts precluded summary judgment, including: 1) Morgan and PPR had alleged KBC's "defective work ... and fail[ure] to properly supervise its contract labor, result[ed] in damage to the project, including the work of other sub-contractors ... which had to be repaired at additional expense to PPR and Morgan"; 2) PPR and Morgan submitted "$168,642.25 in back charges to KBC ... which included the additional expenses incurred by PPR and Morgan to repair the damage to the work of other contractors ... which was outside of KBC's contract scope"; and 3) "if [Insurer] had contacted KBC's attorney in January of 2010 regarding the specific nature of Morgan's and PPR's allegations against KBC and the reasons for the back charges submitted to KBC, Timothy Harlow at that time would have given [Insurer], through KBC's attorney, all the information contained in his affidavit." These facts were supported by an affidavit of KBC's member/Vice-President, Mr. Harlow. Also attached are excerpts from depositions of two of Insurer's representatives, whose admissions KBC claims supports potential liability under the CGL Policy.[4]

¶ 16 Insurer filed a reply brief, citing authority for its choice of law argument and clarifying its counsel had prior and personal knowledge of *Motorists Mutual* which opinion admittedly was decided two months after

Insurer's denial of KBC's request for a defense to the cross-claim and indemnification.

¶ 17 By "Order" filed December 10, 2013, the trial court found Insurer's summary judgment "motion is addressed to the interpretation of the [CGL] policy" and that "Kentucky law should be applied in interpreting the duties and obligations of [Insurer] to defend and to pay claims under that policy." Based on its review of the parties' "briefs, authorities, and contract of insurance,"[5] the Court sustained Insurer's motion for summary judgment. KBC's appeal followed.

## ANALYSIS

### Choice of Law

¶ 18 "The applicability and tenor of foreign law is a matter for the court." *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶ 47, 796 P.2d 276, 294. "As a question of law, we review the trial court's decision on the choice of law issue *de novo.*" *Edwards v. McKee*, 2003 OK CIV APP 59, ¶ 9, 76 P.3d 73, 76.

¶ 19 In this case, Insurer asserts "[it] *issued* an insurance policy in Bausch, Kentucky to [KBC]" and argues that Kentucky law applies to the interpretation of the CGL policy "because [it] was initiated and signed in Kentucky for a Kentucky-based contracting company *doing work* in Oklahoma." KBC admits the Policy was issued in Kentucky but claims such fact is "immaterial" because there was no conflict of law *at the time* Insurer denied KBC's defense and coverage request in January 2010, since neither Oklahoma nor Kentucky had then decided

---

4. KBC's "statement of facts precluding summary judgment" are primarily a list of so-called "admissions" by Insurer's representative, which the record demonstrates are simply their responses to hypothetical fact situations. Further KBC's evidentiary materials fail to support Mr. Dowdy's "admission" that "[Insurer] did *nothing* to investigate what was meant by the term 'damages' as used in Morgan's cross-claim." Its cite to a single page of Dowdy's deposition in which he responds "No" to the following question, "Can you point me to a single additional act, *other than those that you've already given me in an answer*, that shows [Insurer] took steps to investigate the meaning of the word 'damages' as it was used by Morgan in their amended answer and cross-claim?"

5. In the first sentence of the Order, the trial court includes in its list of materials it had reviewed, "counsel's letter to the Court dated November 19, 2013." The letter, which is included in the accelerated record and shows it was filed the next day, notes the court's receipt of a copy of a Tenth Circuit Court of Appeals case from opposing counsel "at the close of the summary judgment hearing." Insured's counsel argues at great length that the holding in the case is not applicable because its facts are distinguishable and the Tenth Circuit focuses exclusively on Colorado law. KBC has raised no objection to the trial court's consideration of the letter.

whether a claim of property damage caused by defective construction constitutes a claim for property damages caused by an "occurrence." [6] Neither party cites any supporting authority, Oklahoma or otherwise, for their arguments.

¶ 20 According to our research, "the threshold question in determining the application of choice of law rules is whether there is a true conflict, a false conflict, or no conflict." 16 Am.Jur.2d *Conflicts of Law* § 4. "If the law and interests of the concerned states are not in conflict, the result is deemed a 'false conflict' or no conflict at all, and no choice of law analysis need be made." 15A C.J.S. *Conflicts of Law* § 31. *See also Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 19, 138 P.3d 826, 831 (noting "where neither party argued a difference in Texas or Oklahoma law 'any perceived choice of law issue is contrived' "); *Roby v. Bailey*, 1993 OK CIV APP 93, 856 P.2d 1013, 1016 ("A choice of law question always involves choosing between the 'conflicting laws' of two or more states.")

¶ 21 Our research also reveals Oklahoma has long abided by the rule that "the law of another jurisdiction presents a question of fact and must be pleaded and proved before it could be considered by the trial court." *C.I.T. Corp. v. Edwards*, 1966 OK 180, ¶ 12, 418 P.2d 685, 688; *Gray v. Martin*, 1952 OK 96, ¶ 0, 206 Okla. 167, 242 P.2d 698. More recently, the Oklahoma Supreme Court held "[o]ne who asserts that a law different from that of Oklahoma governs the dispute bears the *burden* of identifying and invoking that other law. Unless foreign law is invoked, Oklahoma's domestic law will be deemed to govern." (Emphasis added.) *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 1994 OK 20, ¶ 21, 896 P.2d 503, 513, *cert. denied*, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995).

¶ 22 *Lewis*, which we find instructive here, involved a dispute over whether a 1974 agreement between the tribal members (plaintiffs) and the Housing Authority (Authority) required the mineral estate to be conveyed with the home and surface rights after the plaintiff's payoff of the loan. The trial court denied the Authority's request to take judicial notice and to apply four tribal laws enacted in 1983, specifically the one amended in 1987 requiring the Authority to retain title to any mineral interest acquired by it in fee simple and to keep any revenues for tribe-related purposes.

¶ 23 After a bench trial, the trial court in *Lewis* found the land was not in Indian country when the parties' agreement was signed, and Authority appealed the judgment directing transfer of the mineral estate to the plaintiffs. The Supreme Court affirmed the trial court's choice of law decision, finding state contract and conveyance law applied because 1) the parties' "agreement was executed *before* the Tribe reorganized Authority in 1983 as a tribal agency," 2) "*at the time of* ... the [parties'] *contract execution*" Authority was acting as a state agency under state law, and 3) "*when the parties entered into [their] Agreement,* the project area involved was not ... a 'dependent Indian community.' " (Emphasis added.) *Id.*, 1994 OK 20, ¶¶ 21–22, 896 P.2d 503. Thus, there was no conflict between the state and tribal laws at the time relevant to the plaintiff's action for specific performance of their contract, *i.e.*, when it was executed, because, at that time, the tribal laws were not then in effect.

¶ 24 In this case, Insurer's "liability for breach of its duty to provide a defense is measured by the facts that were *known* and *knowable*—by what the insurer knows or by what the insurer was capable of discovering itself—at the time the insured's request was tendered." (Italics in original.) *First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 1996 OK 105, ¶ 15, 928 P.2d 298, 305. Similarly, in a bad faith tort claim, "the decisive question is whether the insurer had a 'good faith belief, *at the time its performance was requested,* that it had a justifiable reason for withholding payment under the policy.' " *Newport v. USAA*, 2000 OK 59, ¶ 10, 11 P.3d 190, 195 (quoting

---

**6.** Based on our conclusion regarding the trial court's choice of law ruling, we need not address KBC's arguments distinguishing the facts and challenging the applicability of Insurer's authority, *Motorists Mutual Inc.*

*Buzzard v. McDanel,* 1987 OK 28, 736 P.2d 157).

■ ¶ 25 Insurer has carried its burden for asserting Kentucky law. However, based on *Lewis,* this Court agrees with KBC that Insurer has failed to demonstrate an *actual* conflict of law between that state and Oklahoma *at the time relevant* for deciding this case, *i.e.,* when Insurer denied KBC's request for a defense to the cross-claim asserted against it in the federal case and for coverage of its claim.

¶ 26 Turning to Insurer's argument, Oklahoma's choice of law statute for contract actions, 15 O.S. § 162, was enacted in 1910 and still today provides, "[a] contract is to be interpreted according to the law and usage of the place *where it is to be performed,* or *if it does not indicate a place of performance,* according to the law and usage of the place *where it is made.*" (Emphasis added.) Citing § 162, the Court in *Harvell v. Goodyear Tire and Rubber Co.,* 2006 OK 24, ¶ 14, 164 P.3d 1028, 1033–1034, held "[i]n Oklahoma ... the established choice of law rule in *contract actions* known as lex loci contractus is that, *unless the contract terms provide otherwise,* the nature, validity, and interpretation of a contract are governed by the law where the contract was made." (Emphasis added.) [7] Regarding § 162, the Court explained in *Panama Processes, S.A. v. Cities Service Co.,* 1990 OK 66, ¶ 25, 796 P.2d 276, 287:

> It is only when there is *no indication in the contract* where performance is to occur that the interpretation would apply the lex loci contractus rule. In this situation, *we*

look to the *contract to determine if there is a place of performance indicated;* if there is, the law of the place of performance controls under our statute, and there is no need to determine the laws of the place where the contract was made. (Emphasis added.)

Thus, as the movant for summary judgment advocating for application of Kentucky law to interpret the CGL Policy at issue in this contract action filed in Oklahoma, Insurer has the burden under § 162 and *Harvell* to demonstrate the CGL policy does not identify "where it is to be performed," *i.e.,* lacks a choice of law provision *and/or* Insurer and KBC did not *otherwise* agree to or "indicate a place of performance." [8]

■ ¶ 27 When reviewing an order granting a motion for summary judgment, this Court "bears an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Murray County v. Homesales, Inc.,* 2014 OK 52, ¶ 4, 330 P.3d 519, 523. During the summary judgment process in this case, Insurer has made no attempt to establish the policy does not indicate a place of performance. Insurer has failed to demonstrate § 162's mandate, which proof would then permit the state law where the policy was made to govern its interpretation in a contract action filed in Oklahoma. Accordingly, we conclude the trial court erred by finding Kentucky law governs KBC's action. The order on appeal, however, does not require reversal, because we find, as discussed below, the trial court nevertheless reached the correct result. *Morales v. City of Oklahoma City, ex rel.*

---

7. *See also* Judge Edmondson's written concurrence in part/dissent in part in *Harvell* (explaining 15 O.S. § 162 has two well-known choice of law principles, *lex loci solutionis* and *lex loci contractus,* and "when there is *contractual silence* on place of performance, the law of the place where the contract was created applies"). *Accord* Patrick L. Stein, *Choice of Law Review: Defining the Place of Performance for General Contract Disputes in Oklahoma,* 64 Okla. L. Rev. 17, 55 (2011).

8. For example, in an action for negligence and breach of contract brought in Oklahoma against the insured who allegedly installed faulty mud pit liners at an oil site in Oklahoma, the insured filed a third-party action against its commercial liability insurer, which company had apparently issued the policy to the insured's office in Texas. The trial court granted the insurer summary judgment after finding their CGL policy was governed by Texas law where it had been issued. In the appeal by the insured, the Court of Civil Appeals in *Fossil Creek Energy Corp. v. Cook's Oilfield Services,* 2010 OK CIV APP 123, ¶ 12, 242 P.3d 537, found Oklahoma law governed the interpretation of the policy issued to the insured at its office in Texas. As relevant here, the Court held the insurer had agreed within the policy's "Service of Suit" provision to application of the state law where suit had been filed against its insured.

*Oklahoma City Police Department,* 2010 OK 9, ¶ 9, 230 P.3d 869, 875.

### The Policy

¶ 28 Under the "Insuring Agreement" section of the CGL Coverage Form submitted to the trial court, the Policy provides, in relevant part:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ... "property damage" to which this insurance does not apply....

\* \* \* \* \*. \* :

b. This insurance applies to ... "property damage" only if:

(1) The ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [9]

¶ 29 As explained in the CGL Coverage Form, the "words and phrases that appear with quotation marks have a special meaning" and are defined in Section V. The following terms are used in the Policy's Insuring Agreement:

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[10]

\* \* \*

20. "Property damage" means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or ...

### The Issue on Appeal

¶ 30 The parties correctly point out, and our research confirms, a split of authority on the issue upon which they focus in this case, *i.e.,* whether claims for "faulty workmanship" are caused by an "occurrence" under CGL policies.[11] However, we need not decide that issue or related issues in this appeal.

¶ 31 Assuming *arguendo* the alleged "property damage" in this case was caused by an "occurrence" as defined by the Policy,[12] any coverage provided by the CGL Policy's Insuring Agreement is excluded by the Policy's "Contractual Liability" exclusion. In relevant part, the Policy provides "[t]his insurance does not apply to:"

b. Contractual liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages *by reason of the assumption of liability in a contract or agreement.* This exclusion does not apply to liability for damages:

See 9A Couch on Insurance § 129:4 (3rd Ed.), *"What does and does not constitute an 'occurrence'—Examples";* "Occurrence Requirement," 4 Bruner & O'Connor Construction Law, § 11.68; Recent Developments in Insurance Law," 7 No. 1 Journal of the American College of Construction Lawyers 1 (2013).

9. No issue has been raised regarding the remaining two requirements under (b): 2) the property damage occurs during the policy period and 3) prior to the coverage term in which the property damage occurs, the insured did not know that it had occurred or had begun to occur, in whole or in part.

10. Nothing in the accelerated record, including the select pages from the CGL Policy at issue, identifies which standard form CGL policy was issued to KBC. From our research, the definition of "occurrence" in this CGL Policy is the same as that used in the 1986 CGL policy form. *See* 4 Bruner & O'Connor Construction Law § 11.67.

11. Because the decisions and scholarly articles are voluminous and our research confirms a general trend from what was the majority view, this court declines to discuss here the varying views on these issues within CGL policies and instead cites to recent authorities on insurance.

12. Our conclusion the contractual liability exclusion applies necessarily dispenses with another issue raised by evidentiary material but not directly decided by the trial court, *i.e.,* the alleged inadequacy of KBC's notice duty under the CGL Policy to provide facts material to Insurer's ascertainment of its duty to defend, a breach of which "may modify, excuse or defeat the insurer's performance under the contract." *See First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland,* 1996 OK 105, ¶ 16, 928 P.2d 298, 303.

(1) That the insured would have in the absence of the contract or agreement; or (2) Assumed in a contract that is an "insured contract", provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement. When a claim for such bodily injury or property damage is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the insured contract. Such defense payment will not reduce the limits of insurance. (Italics added.)

¶ 32 The Oklahoma Supreme Court in *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 5, 812 P.2d 372, 374, addressed a similar exclusion for "liability *assumed* by the Insured under contract or agreement" in a CGL policy in which the insurer, like in this case, had agreed to pay all sums for which the insured "shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence."[13] The Court found there was no ambiguity with the exclusion's language (either when read alone or with two business risk exclusions not at issue in this case) and held it "removes from coverage *any cause of action* grounded upon a liability arising 'under contract or agreement . . .'" (Emphasis added.) *Dodson*, 1991 OK 24, ¶ 14, 812 P.2d at 377.

¶ 33 More recently, another panel of the Court of Civil Appeals in *Alfalfa Electric Cooperative, Inc. v. Mid–Continent Casualty Company*, 2015 OK CIV APP 53, 350 P.3d 1276 (mandate issued May 28, 2015), interpreted an exclusion in a commercial auto policy which similarly excluded "liability *imposed* under any contract or agreement." The insurer in *Alfalfa Electric* argued the contractual liability exclusion eliminated coverage for its insured who had been sued for, *inter alia*, breach of a bailment contract and negligence.

¶ 34 The Court in *Alfalfa Electric* concluded the holding in *Dodson* aligned with the current majority of state courts who had interpreted exclusions in CGL policies for "liability *assumed* under any contract or agreement" to apply without any limitation, *i.e.*, no coverage for a contract-based claim. Based on *Dodson*, the Court in *Alfalfa Electric* agreed with the insurer, finding the unambiguous terms of the exclusion "removes from coverage *any cause of action* grounded on a *liability arising under contract or agreement*, *i.e.*, contract-based claims." (Emphasis added.) 2015 OK CIV APP 53, ¶ 50, 350 P.3d 1276. The Court found the contractual liability exclusion applies to exclude the claim against its insured for breach of bailment agreement *unless* one of that exclusion's two exceptions "reserves coverage." *Id.*

¶ 35 After considering the evidentiary materials and the parties' arguments about the exceptions, the Court in *Alfalfa Electric* affirmed the trial court's judgment in favor of the insured based on the exception for "liability for damages . . . b. That the 'insured' would have in the absence of the contract or agreement." Under the facts of that case, the Court found, regardless of the bailment agreement, the insured was liable under general common law negligence and Oklahoma's motor carrier regulations.

¶ 36 In this case, the following facts are either admitted by KBC or are not disputed: 1) KBC had a contractual duty to complete the work to PPR's satisfactory inspection; 2) damages for which KBC was contractually responsible had to be repaired

---

**13.** In *Dodson*, the insured was a building contractor whose subcontractor improperly installed a school's roof, used defective and/or non-specified materials, and was unable on demand to repair or replace it. The school board sued the contractor, seeking costs to replace the roof and for interior damages caused by the leaky roof. After the insurer denied the insured's claim for coverage of such costs under its CGL policy, the school board and contractor submitted the case to arbitration and judgment was granted against the insured. The insured sued the insurer for failure to defend and bad faith, and the insurer admitted liability for the "interior property damage caused by the roofing defect" but denied coverage for the subcontractor's defective workmanship or materials. The trial court granted summary judgment to the insurer, finding the policy covered "the loss resulting from the roofing subcontractor's faulty craftsmanship." The jury trial resulted in a large verdict and judgment for actual and punitive damages against the insurer, which it appealed.

by other subcontractors "at additional expense" to PPR and Morgan; 3) PPR and Morgan submitted $168,642.25 in "back charges"[14] to KBC, and 4) the "back charges ... exceeded the value of [KBC's] subcontract."

¶ 37 The only reasonable inference from these undisputed material facts is that *pursuant to the parties' subcontracts* Morgan and PPR had the right to deduct and KBC agreed to pay damages for its work that either was not completed or failed to meet or perform to PPR's satisfaction. Morgan's cross-claim, filed as part of the original contract-based claim between CLP and KBC for the latter's failure to pay under their contract for contract labor, is also a contract-based claim which clearly and unambiguously denies any and all liability for KBC's alleged debt, justifies PPR's rejection of KBC's work and nonpayment under their subcontracts, and requests indemnification from KBC in the event judgment is granted against KBC and/or Morgan.

¶ 38 KBC argues Insurer's reliance on this exclusion is misplaced, because "Morgan's cross-claim is not limited to breach of contract allegations but includes negligence allegations as well." We disagree. There are no actual allegations in the cross-claim of negligence, supervision or otherwise, against KBC. Morgan's references to "specific duties" owed by KBC to CLP[15] and to KBC's knowledge of potential financial liability that could be placed on PPR and other

subcontractors in the same project for KBC's breach of duties owed to CLP, are simply attempts to establish a contractually-based "fiduciary" relationship between KBC and Morgan to support the latter's claim for breach of fiduciary duties and damages.

¶ 39 Based on *Dodson* and *Alfalfa Electric,* we conclude the contractual liability exclusion in the CGL Policy applies here to remove coverage for the contract-based claims alleged against KBC in the federal case unless such coverage is reserved by one of its two exceptions.[16] Unlike the plaintiff in *Alfalfa Electric,* KBC has failed to make any argument which would support reservation of coverage in this case, *i.e.,* KBC would be liable for the damages to Morgan outside their subcontracts.

¶ 40 To support reservation of coverage by the remaining "insured contract" exception, KBC argues "Insurer admits that the contract pursuant to which Morgan sued may be an insured contract to which the contractual liability exclusion in the CGL policy does not apply." The deposition testimony of Insurer's two representatives, upon which KBC relies to support this argument, simply refers to the contract between KBC and CLP. Based on our reading of the one-page contract, Insurer correctly argues it contains no assumption of liability for damages for bodily injury or property damage and the language upon which KBC cites as a division of liability is merely a division of responsibilities under the contract. Insurer

---

14. A "back charge" is a "term of art of the construction industry" which may refer to "extra charges billed to a contractor for work performed by the subcontractor but which was not included in the contract between the parties." *MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc.,* 1991 OK 87, n. 9, 818 P.2d 469, 475. The same phrase may also refer to costs that can be charged by a contractor against a defaulting subcontractor, the allowable amount of which is set by their contract. Christopher G. Hill, "Termination, Warrant Claims and Back Charges," Construction Law, February 8, 2013—http://constructionlawva.com/termination-warranty-claims-back-charges.

15. Paragraph 6 of the cross-claim states that "[KBC] undertook further specific duties with regard to labor services allegedly provided by CLP in relation to the subject project, including, without limitation, a duty to notify CLP of any

applicable prevailing wage laws or regulations, a duty of adequate supervision and direction of provided workers and to timely present any dispute concerning the quality of the labor or the amount of CLP's invoices." Only CLP would have a right to bring a claim for negligent supervision and/or direction of its workers against KBC.

16. KBC has not argued the policy or the contractual liability exclusion is ambiguous, masked in technical or obscure language, or hidden in the policy's provisions, which if correct, would trigger the doctrine of reasonable expectations. *Max True Plastering Co. v. U.S. Fid. and Guar. Co.,* 1996 OK 28, ¶ 24, 912 P.2d 861, 870. Its expectation of coverage argument is simply based on interpretations by several state courts that the term "occurrence" within a policy is ambiguous.

has carried its burden on summary judgment to demonstrate no coverage under the CGL Policy. "Once the moving party has made the required showing, the adverse party *must then assume the burden of demonstrating the existence of a material fact that would justify a trial of that issue.*" (Italics in original.) *Bowers v. Wimberly,* 1997 OK 24, ¶ 13, 933 P.2d 312, 315. KBC has failed to come forth with evidence supporting that burden regarding either of the two exceptions to the Contractual Liability exclusion under the CGL Policy in this case.

## CONCLUSION

¶ 41 The trial court erred in ruling that Kentucky law governed the interpretation of the CGL Policy Insurer issued to KBC. Applying Oklahoma case law, we find there was no potential for liability under the CGL Policy for the cross-claim asserted against KBC in the federal case which cause of action and property damages were clearly "contract-based." Consequently, Insurer had no duty to defend the cross-claim or to indemnify KBC's losses. Although based on other grounds, we affirm the trial court's summary judgment in favor of Insurer.

**AFFIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.