

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| THE CENTRAL TRUST BANK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD78757 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | August 2, 2016 |
| WILLIAM GRAVES, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Gary D. Witt, Judges

William Graves appeals from the trial court's denial of his motion to dismiss or stay the litigation and compel arbitration with Central Trust Bank (Central), his former employer. Graves argues that Central is bound by the mandatory arbitration provision of Graves's employment contract with IFC Holdings, Inc. (INVEST), either as a third-party beneficiary of that contract or by the doctrine of equitable estoppel. We affirm.

## Background[1]

Graves was employed by Central "to engage in marketing and sale of . . . Investment Products," which Central apparently acquired from INVEST. Graves was also employed by INVEST; he had separate employment contracts with each entity. After nearly ten years of working for Central, Graves abruptly departed one day for lunch and never returned. Central discovered later that day that Graves had begun working for Wells Fargo Advisors. Within days, Central began receiving requests from Wells Fargo Advisors to transfer brokerage and related bank accounts from customers that had been served by Graves while he was employed with Central and INVEST.

Central filed suit against Graves, alleging promissory estoppel (based upon representations Graves had made to Central regarding his impending retirement and actions taken by Central in reliance on those representations) and breach of contract (based upon Graves's solicitation of brokerage business from Central/INVEST customers for the benefit of himself in his new position at Wells Fargo Advisors).[2] Graves filed a Motion to Dismiss, or in the Alternative, Motion to Stay Proceedings and Compel Arbitration. Graves argued that Central's claims were governed by the mandatory arbitration rules of the Financial Industry Regulatory Authority (FINRA).[3] Central opposed the motion, arguing that there was no agreement to arbitrate between Central and Graves. Central argued: (1) that it was not subject to FINRA's mandatory arbitration rule because it was neither a member nor an "associated person"

---

[1] The facts are taken from the motions and pleadings below and are assumed true, solely for the sake of the issues on appeal.

[2] Originally, INVEST was also a plaintiff in the action, but INVEST later voluntarily dismissed its claims, leaving Central as the only plaintiff.

[3] On July 26, 2007, the [National Association of Securities Dealers (NASD)] and the enforcement arm of the New York Stock Exchange were consolidated into one self-regulatory organization called [FINRA]." *Mead v. Moloney Sec. Co., Inc.*, 274 S.W.3d 537, 540 n.1 (Mo. App. E.D. 2008). FINRA is "an independent, not-for-profit organization authorized by Congress to protect America's investors by making sure the securities industry operates fairly and honestly." http://www.finra.org/about (last visited July 26, 2016).

under FINRA's definitions governing the scope of its mandatory arbitration rule; (2) Graves's agreement to arbitrate disputes found in FINRA form U-4 did not apply to Central; and (3) nothing in the contract between Graves and Central mandated arbitration. Graves responded by arguing that: (1) his employment contract (with Central) mandated his compliance with all applicable securities laws and regulations (including the FINRA arbitration rule); and (2) Central was a third-party beneficiary of Graves's U-4 form, which authorized him to sell securities and mandated arbitration. The trial court denied Graves's motions without explanation. Graves appeals.

## Analysis

Graves raises a single point on appeal. He argues that the trial court erred in denying his motion to compel arbitration because Central was bound by FINRA's mandatory arbitration rule insofar as: (1) Central was a third-party beneficiary of the employment contract between Graves and INVEST, thus binding Central to INVEST's obligation to arbitrate; and (2) Central was estopped from denying its obligation to arbitrate because it accepted the benefits of Graves's employment with INVEST.[4] We disagree.

### A. Standard of Review

"'The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015) (quoting *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 510 (Mo. banc 2012)). "'Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate.'" *Id*. (quoting *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006)). "Whether the trial court

---

[4] "An appeal may be taken from . . . [a]n order denying an application to compel arbitration made under section 435.355." § 435.440, RSMo Cum. Supp. 2015.

3

should have granted a motion to compel arbitration is a question of law that [we] review[] de novo." *Id.*

Though Central does not challenge the preservation of Graves's point on appeal, we question whether his claim before us is properly preserved. Though the crux of his claim has always been that arbitration is required by FINRA rules, his method of seeking to apply those rules to Central has varied. Below, he argued that Central's claims were governed by the mandatory arbitration rule of FINRA because his employment contract (with Central) mandated his compliance with all applicable securities laws and regulations (including the FINRA arbitration rule) and that Central was a third-party beneficiary of Graves's U-4 form, which authorized him to sell securities and mandated arbitration. On appeal (in his point relied on), however, he argues that Central's claims are governed by the FINRA mandatory arbitration rule because Central is a third-party beneficiary of his contract with INVEST, rather than his U-4 form, and that Central is estopped from denying arbitration, again by accepting benefits of his contract with INVEST.

"[A]n appellant must properly preserve their allegations of error in order to secure review on appeal." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 383 (Mo. App. E.D. 2014). "We generally will not convict the trial court of error on an issue that was not put before it to decide." *Id.* "A point is preserved for appeal only if it is based on the same theory presented at trial." *Id.* at 384. "A party may not advance a new [theory] on appeal." *Id.* "Nor may the party alter or broaden the scope of the [theory] voiced at trial." *Id.* "Rather, an appellant must maintain a consistent theory of [error]." *Id.* Here, it appears that Graves's theory has morphed from that presented below. But as Central raises no complaint, we will review Graves's claim on the merits.

4

**B. FINRA's Mandatory Arbitration Rule**

FINRA has published a manual containing all of its operating rules. In the manual is FINRA's Code of Arbitration Procedure for Industry Disputes. In that code, Rule 13200(a) provides: "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." FINRA Rule 13100(a) defines "associated person" as "a person associated with a member, as that term is defined in paragraph (r)." FINRA Rule 13100(r) defines "person associated with a member" as:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or
>
> (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

"[T]he term 'associated person' refers only to natural persons." *U.S. Trust Co., N.A. v. Rich*, 712 S.E.2d 233, 237 (N.C. Ct. App. 2011).

Here, it is undisputed that Central was *not* a member of FINRA. And, as a business entity, it is evident that Central is not a natural person and, thus, cannot be considered an "associated person" under FINRA Rule 13100(a) or (r). To fall within FINRA's arbitration code, there are two requirements: (1) the dispute must "arise[] out of the business activities of a member or an associated person"; *and* (2) the dispute must be "between or among: Members; Members and Associated Persons; or Associated Persons." FINRA Rule 13200(a). Even assuming that Graves has satisfied the first requirement, he has clearly failed the second. And it

5

is undisputed that nothing in the contract between Central and Graves constitutes an arbitration agreement. Thus, Graves has failed to identify any source imposing an independent duty to arbitrate on Central.

### C. Central is not bound by INVEST's obligation to arbitrate.

Apparently recognizing that Central has no independent obligation to arbitrate under its contract with Graves, Graves argues that Central is nevertheless bound by INVEST's obligation to arbitrate under the theory that Central is a third-party beneficiary of Graves's contract with INVEST.[5] We disagree.

To support his theory, Graves cites a United States Supreme Court case for the proposition that "'traditional principles' of state law permit an arbitration agreement to be enforced 'against nonparties to the contract' through a variety of state contract law theories, including 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel' . . . ." (App. Br. 11) (quoting, in part, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).[6] While *Arthur Andersen* does support Graves's assertion, that case involved a nonsignatory seeking to compel arbitration against a signatory under an arbitration agreement. *Arthur Andersen*, 556 U.S. at 630-31. But "[a] nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory," as is the case here. *Reid v. Doe Run Res. Corp*.,

---

[5] For the sake of argument only, we assume that INVEST does indeed have an obligation to arbitrate any disputes with Graves. But this is not an issue we decide in this appeal. And to the extent that INVEST is obligated, the nature of its obligation appears to arise from either the FINRA rules themselves or from Graves's U-4 form (his FINRA membership agreement), as it does not appear expressly within the INVEST contract. Though Graves does not raise the claim in his point on appeal, it is worth noting that Central could not be bound by Graves's U-4 form for two reasons: (1) the U-4 does not, in any way, reference Central as a third-party beneficiary or contain any language benefitting a third party in Central's position, *see Bank of Am., N.A. v. UMB Fin. Servs., Inc*., 618 F.3d 906, 913 (8th Cir. 2010); and (2) the arbitration agreement contained within the U-4 is based upon the FINRA rules, which simply do not apply to Central as a non-member and non-associated person.

[6] Graves omits the words, "by or," from the quoted passage in *Arthur Andersen*, indicating that the various theories support enforcement "*by or* against nonparties to the contract." As is discussed in more detail below, a third-party beneficiary theory might support enforcement of an arbitration agreement *by* a nonsignatory, but it is, alone, insufficient to support enforcement *against* a nonsignatory.

6

701 F.3d 840, 846 (8th Cir. 2012). And "the nature of arbitration makes [this distinction] important." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995). "Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Id*. In cases where nonsignatories have sought to bind signatories to an arbitration agreement, courts have enforced the arbitration agreements because the signatories "had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves," and were thereby estopped from denying the agreement's existence. *Id*.

But where "'[a] willing signatory seek[s] to arbitrate with a non-signatory that is unwilling[, the signatory] must establish at least one of the [following] five theories'[:] . . . (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; [or] (5) estoppel." *Reid*, 701 F.3d at 846 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005)). Mere status as a third-party beneficiary, alone, is *not* sufficient to support binding an unwilling nonsignatory to an arbitration agreement. Even if a party is a third-party beneficiary of an agreement containing an arbitration provision, the third-party must still manifest some agreement to arbitrate or otherwise be bound (e.g., through any of the five theories identified in *Reid*) before a signatory may bind the third-party beneficiary. *See Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006) (holding that, because the nonsignatories "never indicated a willingness to arbitrate" with the signatory, they could not be bound by the arbitration agreement); *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) ("arbitration is a matter of consent, not of coercion"). Here, in his argument to bind Central, Graves has identified only one of the five theories laid out in *Reid* (estoppel), which will be discussed in more detail below.

7

In any event, Graves has failed to establish that Central is a third-party beneficiary of Graves's contract with INVEST. "To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). "In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." *Id*. "Furthermore, a mere incidental benefit to the third party is insufficient to bind that party." *Id*. "Incidental beneficiaries are parties benefitting only collaterally from the contract . . . ." *State ex rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. banc 1987). "Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a direct obligation to him." *Chesus v. Watts*, 967 S.W.2d 97, 106 (Mo. App. W.D. 1998).

Graves has not identified any part of the INVEST contract imposing a direct obligation on behalf of either INVEST or Graves in favor of Central. At best, Graves has established that the INVEST contract contemplated the existence of Central as a subscriber to INVEST's services and Central's obligation to furnish Graves's compensation, but no more. The only benefits Central received from the INVEST contract were incidental benefits from the contractual relationship between Graves and INVEST and not from the contract itself. *See Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d at 348. Thus, even if status as a third-party beneficiary, alone, were sufficient to bind a nonsignatory to arbitrate, Graves has failed to prove that Central held that status.

8

**D. Central is not estopped from denying arbitration.**

As noted above, the only theory identified in *Reid* for binding nonsignatories to arbitration agreements that Graves has alleged is estoppel.

"By accepting benefits, a party may be estopped from questioning the existence, validity, and effect of a contract." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 437 (Mo. banc 2003). Graves argues that Central benefitted from Graves's contract with INVEST insofar as "Graves could not have marketed and sold INVEST securities without registering with FINRA and affiliating with a registered broker/dealer. As Central expressly pleaded below, that was the sole purpose for which Central entered into its Employment Agreement with Graves." But "mere indirect benefits are [not] sufficient to establish estoppel" because "the nonsignatory is benefiting from the *contractual relationship* of those who are indeed parties to the contract, rather than benefiting from the contract, itself." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d at 348 (emphasis added). Certainly Central benefitted from Graves's ability to market and sell securities, but that was not the purpose of Graves's contract with INVEST. The INVEST contract was to allow Graves to market and sell INVEST's products. The contract does not specify that this ability to sell and market was for the direct benefit of anyone other than Graves and INVEST. Because Central—as opposed to any other entity—happened to be Graves's employer, it incidentally benefitted from his ability to sell and market securities, but the receipt of indirect benefits is insufficient to estop a party from denying an agreement to arbitrate.

Graves also argues that Central is estopped from denying an agreement to arbitrate because it is claiming "damages based, in part, on Graves'[s] alleged breach of the INVEST agreement." While it is true that "a non-signatory who exploits a contract containing an arbitration clause is estopped from repudiating that clause," *Merrill Lynch Int'l Fin., Inc. v.*

*Donaldson*, 27 Misc. 3d 391, 397 (N.Y. Sup. Ct. 2010), Graves's argument is based upon assertions made in the *original* petition, when INVEST was still a plaintiff in the action. But these assertions appear to have been made on behalf of INVEST, and not Central. After INVEST dismissed its cause of action, the assertions Graves relies upon no longer appeared in the amended petition. Thus, Central is not relying on any breach of the INVEST contract in its lawsuit; rather, it is relying on provisions of its own contract with Graves, along with its own agreement with him regarding the terms of his impending retirement.

In sum, Central does not have an independent obligation to arbitrate with Graves, and Graves has failed to establish that any obligation on the part of INVEST can be imputed to Central. Accordingly, the trial court did not err in denying Graves's motion to compel arbitration.

Point denied.

### Conclusion

The trial court committed no error in refusing to compel arbitration of the dispute between Central and Graves. Its decision is affirmed.

_____
Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Gary D. Witt, Judges, concur.