OSCN Found Document:WILKIN v. MITCHELL

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 WILKIN v. MITCHELL
2024 OK CIV APP 19
Case Number: 121950
Decided: 08/02/2024
Mandate Issued: 08/29/2024
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I

Cite as: 2024 OK CIV APP 19, __ P.3d __

 
See Okla.Sup.Ct.R. 1.200 before citing.
 
MELINDA WILKIN, fka MELINDA POHLENZ, Plaintiff/Appellee,
v.
JACK R. MITCHELL, Defendant/Appellant, 
and
RIVER BEND REAL ESTATE INVESTMENT, LLC, a Missouri limited liability company, Defendant.
APPEAL FROM THE DISTRICT COURT OF
CREEK COUNTY, OKLAHOMA
HONORABLE DOUGLAS W. GOLDEN, TRIAL JUDGE
AFFIRMED
Jean Walpole Coulter, Brian L. Mitchell, MITCHELL BONDS, PLLC, Sapulpa, Oklahoma, for Plaintiff/Appellee,
Thomas Janer, SELBY, CONNOR & JANER, Bartlesville, Oklahoma, for Defendant/Appellant.
THOMAS E. PRINCE, JUDGE:
¶1 This dispute arises out of an order that denied a Motion to Compel Arbitration and to Stay Trial Court Proceedings, which had been sought by the Defendant/Appellant, Jack R. Mitchell. Mr. Mitchell was a party to a Confidential Settlement Term Sheet ("Settlement Agreement") that required repayment of a $1.5 million investment in a project that included two other individuals: i.e., Clain Patterson and Ralph Charles Wilkin, III. When payments were not made in accordance with the terms of the Settlement Agreement, Mr. Wilkin did not pursue this action. This action was brought instead by his spouse, the Plaintiff/Appellee, Melinda Wilkin, alleging a single claim of breach of contract. The Settlement Agreement included a mandatory arbitration clause and Mr. Mitchell moved to compel arbitration. The Settlement Agreement also contained a choice-of-law provision requiring disputes to be resolved under Missouri law. The trial court denied the motion to compel arbitration. We have reviewed the record and find that the trial court committed no error. Consequently, the Order Covering Hearing on January 4, 2024 ("Final Order"), is AFFIRMED.
BACKGROUND
¶2 Ms. Wilkin alleged in her Petition that Mr. Mitchell and River Bend Real Estate Investment, a Missouri limited liability company,[1] failed to comply with the terms of a Settlement Agreement that required Mr. Mitchell and River Bend to pay back an investment made by Mr. Wilkin and Mr. Patterson. Mr. Wilkin and Mr. Patterson invested $1.5 million in a business venture with Mr. Mitchell. Mr. Wilkin mortgaged his home in order to generate funds for his portion of the $1.5 million investment. A dispute subsequently arose and Mr. Wilkin, Mr. Patterson, and Mr. Mitchell entered into a Settlement Agreement. The Settlement Agreement recited, in part, that "the Parties were previously working toward a merger of existing operations . . . in multiple legal cannabis markets . . . [and that they] wish[ed] to settle their disputes . . .". In substance, the Settlement Agreement required Mr. Mitchell to return $1.5 million in capital to Mr. Wilkin and Mr. Patterson. When a payment allegedly was not made in accordance with the terms of the Settlement Agreement, Mr. Wilkin's spouse, Ms. Wilkin, filed her Petition, on September 8, 2023, alleging a single claim of breach of contract. She asserted that, while she was not a party to the Settlement Agreement, she was a third-party beneficiary of the Agreement. She alleged, in addition, that since Mr. Mitchell stopped making monthly payments as required by the Settlement Agreement, she was in danger of losing her home and Mr. Mitchell should be required to pay off the Wilkins' mortgage.
¶3 Mr. Mitchell responded to the Petition by filing his Motion to Compel Arbitration and to Stay Trial Court Proceedings. Mr. Mitchell alleged that the Settlement Agreement included a mandatory arbitration clause[2] and that Ms. Wilkin should be required to submit to arbitration. The trial court denied Mr. Mitchell's Motion to Compel Arbitration and Motion to Stay. This timely appeal followed.
STANDARD OF REVIEW
¶4 The denial of a motion to compel arbitration is reviewed de novo. Magel v. Nuveen, 2023 OK CIV APP 13, ¶ 18, 529 P.3d 928, 933. A decision on whether a choice-of-law provision should be enforced also is reviewed de novo. Berry and Berry Acquisitions v. BFN Properties, 2018 OK 27, ¶ 12, 416 P.3d 1061, 1068. A de novo review involves "a plenary, independent, and non-deferential examination of the district court's legal rulings." Id. (citation omitted).
ANALYSIS
Choice-of-Law Provision.
¶5 As a general rule, a contract is interpreted according to the law and usage of the place where the contract is made or where it is to be performed. 15 O.S. § 162. Parties are free to enter contracts and specify the law of a particular jurisdiction that will govern the contract. Berry and Berry Acquisitions v. BFN Properties, 2018 OK 27, ¶ 13. "[A] contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement is sought." Id. When determining whether a choice-of-law issue is present, a court must determine whether there is a difference in the law of the jurisdictions implicated. Kentucky Bluegrass Contracting, LLC v. Cincinnati Insurance Co., 2015 OK CIV APP 100, ¶ 20, 363 P.3d 1270, 1274.
¶6 The Settlement Agreement includes a provision stating that Missouri law will govern the contract.[3] The Parties to this dispute rely upon Oklahoma law and Missouri law to support their arguments. They also did not dispute the validity of the choice-of-law provision contained in the Settlement Agreement. The trial court did not indicate whether the ruling it made was pursuant to Oklahoma law or to Missouri law.
¶7 The Parties involved with the Settlement Agreement include Missouri companies and a Missouri resident. We, therefore, find that Missouri has a sufficient nexus to the Parties to justify the choice-of-law provision contained in the Settlement Agreement and we find that the provision does not violate the public policy of Oklahoma. Berry and Berry, at ¶ 14; Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85, ¶ 15, 315 P.3d 971, 977; and Fossil Creek Energy Corp. v. Cook's Oilfield Services, 2010 OK CIV APP 123, n. 5, 242 P.3d 537, 541. We find, in addition, that the substantive law of Missouri does not conflict with the substantive law that governs this case: i.e., whether a signatory to a contract that includes an arbitration clause may compel a non-signatory to the contract to submit to arbitration. Regardless of which jurisdiction's law controls, the Order of the trial court should be affirmed. We will discuss Oklahoma law and Missouri law in turn. 
Oklahoma Substantive Law.
¶8 Under the Federal Arbitration Act ("FAA") and the Oklahoma Uniform Arbitration Act ("OUAA"), courts are required to enforce arbitration agreements according to the terms of the contract. Watts v. Belmar North HOA, 2023 OK CIV APP 22, ¶ 7, 531 P.3d 669, 671. "The primary purpose of both the FAA and the OUAA is to ensure that private agreements to arbitrate are enforced according to their terms." Id. (citations omitted). The existence of an arbitration agreement is governed by state law principles, arbitration agreements are "as enforceable as other contracts, but not more so", and when determining whether a valid agreement to arbitrate exists, the trial court should apply state-law principles that govern the formation of contracts. Id., at ¶ 8 (citations omitted). Arbitration requires mutual consent of the parties and arbitration, generally, will not be forced upon unwilling litigants. Magel v. Nuveen, 2023 OK CIV APP 13, ¶ 22.
¶9 The question presented here is whether a non-signatory to a contract can be compelled to submit to arbitration. Ms. Wilkin claims that she is a third-party beneficiary to the Settlement Agreement and, arguably, should not be required to submit to arbitration because she did not sign the Agreement. In Carter v. Schuster, 2009 OK 94, 227 P.3d 149, the Court, relying upon a decision by the United States Court of Appeals for the Second Circuit, identified five theories for binding nonsignatories to arbitration agreements. Carter, at ¶ 14. Those theories include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing-alter ego; and (5) estoppel. Id. The Carter Court defined equitable estoppel as a false representation or concealment of facts, made with actual or constructive knowledge, to a person without knowledge or means of knowing the facts, with the intent that it be acted upon, and detrimental reliance by the person to whom the representation or concealment of facts was made. Id., at ¶ 15. The Carter Court concluded that a doctor who signed an agreement which included an arbitration clause was not bound by the clause in his individual capacity since he signed the agreement as an agent of a corporation and not as an individual. Id., at ¶ 1.
¶10 We find that none of the five theories for binding a non-signatory to an arbitration agreement set forth by the Carter Court are present. The arbitration agreement was not incorporated by reference for any agreement involving Ms. Wilkin. Ms. Wilkin is not her husband's agent, and she is not involved with a corporation which could justify piercing the corporate veil. Equitable estoppel, as defined by the Carter Court, does not apply because there is no showing or evidence of a false representation or concealment of facts by the Parties. We find that, under Oklahoma law, Ms. Wilkin would not be required to arbitrate under the theories for binding a non-signatory to a contract that includes an arbitration clause.
Missouri Substantive Law
¶11 In Missouri, as in Oklahoma, arbitration is a matter of contract and if parties have not agreed to arbitrate, courts have no authority to require arbitration. Central Trust Bank v. Graves, 495 S.W.3d 797, 802 (Mo.App. W.D. 2016). Missouri has also recognized the five theories for compelling a non-signatory to an arbitration agreement to submit to arbitration that were listed by the Court in Carter v. Schuster, 2009 OK 94, ¶ 14. The Central Trust Bank Court stated:
[W]here "'[a] willing signatory seek[s] to arbitrate with a non-signatory that is unwilling [, the signatory] must establish at least one of the [following] five theories'[:]...(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; [or] (5) estoppel."
Central Trust, at p. 802-803. The first four theories identified by the Court do not apply for the same reasons that they do not apply under Oklahoma law. Regarding the issue of estoppel, the Central Trust Court recognized that: "By accepting benefits, a party may be estopped from questioning the existence, validity, and effect of a contract." Id. In Missouri, "[a] party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens." Shearin v. Flectcher/Mayo/Associates, Inc., 647 S.W.2d 127, 129 (Mo.App. 1982); also see Dubail v. Medical West Building Corporation, 372 S.W. 2d 128, 132, and Dunn Indus. Group v. City of Sugar Creek, 112 S.W.3d 421, 437 (Mo.App.E.D. 2003). However, "'mere indirect benefits are [not] sufficient to establish estoppel' because 'the nonsignatory is benefiting from the contractual relationship of those who are indeed parties to the contract, rather than benefiting from the contract, itself.'". Central Trust, at p. 804 (citation omitted). We find that there is no evidence that Ms. Wilkin accepted any benefits from the Settlement Agreement. Her benefits, if any, are incidental and purely due to her husband's rights under the Settlement Agreement. Under these facts and under Missouri law, we find that Ms. Wilkin is not estopped from avoiding arbitration.[4]
CONCLUSION
¶12 Mr. Mitchel is unable to compel Ms. Wilkin, as a non-signatory and stranger to the Settlement Agreement, to submit to arbitration because the principles of estoppel do not apply under the facts of this case. Our conclusion would be the same regardless of whether we applied the substantive law of Oklahoma or Missouri. Accordingly, the Final Order, is AFFIRMED.
BELL, V.C.J., and SWINTON, P.J., concur.
FOOTNOTES
[1] River Bend was not served with process and is not participating in this appeal.
[2] Section 15.2 of the Settlement Agreement provides: "Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against any other Party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, other than by arbitration before JAMS and in accordance with the streamlined rules for arbitrations, and consents that the determination of such arbitration shall constitute a final, binding judgement upon any Party against who judgement is entered. Each Party irrevocably and unconditionally submits to such alternate dispute resolution. Each Party agrees that a final judgment in any such proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law."
[3] Section 15.1 of the Settlement Agreement provides: "This Agreement, including the preamble, recitation of parties, recitals, and all related documents, including all exhibits, schedules attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Missouri without giving effect to the conflict of law provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of Missouri."
[4] This Court expresses no opinion as to whether Ms. Wilkin has a legally cognizable claim for enforcement of the contract, and we express no opinion as to whether Mr. Mitchell's claim in his Br.-in-chief that Ms. Wilkin's lawsuit is frivolous should be sustained. These are issues to be determined by the trial court.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2010 OK CIV APP 123, 242 P.3d 537, 
FOSSIL CREEK ENERGY CORP. v. COOK'S OILFIELD SERVICES
Discussed

 
2015 OK CIV APP 100, 363 P.3d 1270, 
KENTUCKY BLUEGRASS CONTRACTING, LLC v. CINCINNATI INSURANCE CO.
Discussed

 
2023 OK CIV APP 13, 529 P.3d 928, 
MAGEL v. NUVEEN
Discussed at Length

 
2023 OK CIV APP 22, 531 P.3d 669, 
WATTS v. BELMAR NORTH HOA
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2009 OK 94, 227 P.3d 149, 
CARTER v. SCHUSTER
Discussed at Length

 
2013 OK 85, 315 P.3d 971, 
LINCOLN FARM, L. L. C. v. OPPLIGER
Discussed

 
2018 OK 27, 416 P.3d 1061, 
BERRY AND BERRY ACQUISITIONS v. BFN PROPERTIES
Discussed at Length

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 162, 
Law Governing Contract
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA